Argued and submitted October 27, 2020; remanded for resentencing, otherwise affirmed June 30, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

APOLINAR SANCHEZ-CHAVEZ,
*Defendant-Appellant.*

Washington County Circuit Court
18CR63755; A170028

495 P3d 197

Defendant was charged with multiple sex crimes and, before trial, moved to suppress statements that he had made during a police interview. Defendant argued that the police continued to interview him after he invoked counsel in violation of his federal and state constitutional rights. The court denied the motion. The case proceeded to trial, and, sitting as factfinder, the trial court found defendant guilty of two charges—first-degree rape, ORS 163.375, and first-degree sexual abuse, ORS 163.427—and not guilty of six charges. In announcing its two guilty findings, the court explained that it was persuaded by the physical evidence, the victim's mother's testimony, and the victim's testimony. Later, at sentencing, the court relied on ORS 137.123(5)(a) to impose consecutive sentences for the two convictions, based on the sexual abuse not being merely incidental to the rape. On appeal, defendant challenges the denial of his motion to suppress. He also challenges the imposition of consecutive sentences. *Held*: Assuming without deciding that the trial court erred in denying defendant's motion to suppress, any such error was harmless on this particular record and therefore not a basis for reversal. As for consecutive sentencing, the trial court erred in relying on ORS 137.123(5)(a), given the lack of evidence that the sexual abuse was temporally or qualitatively distinct from the rape. On resentencing, the trial court may consider ORS 137.123(5)(b), which was the state's argued basis for consecutive sentencing.

Remanded for resentencing; otherwise affirmed.

Janelle F. Wipper, Judge.

Kali Montague, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Rebecca M. Auten, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Remanded for resentencing; otherwise affirmed.

**AOYAGI, J.**

Defendant was convicted of one count of first-degree rape, ORS 163.375, and one count of first-degree sexual abuse, ORS 163.427. On appeal, he raises two assignments of error. First, he challenges the denial of his motion to suppress statements made in a police interview, asserting that the police violated his constitutional right to counsel. Second, he challenges the trial court's imposition of consecutive sentences, arguing that the legal standard for consecutive sentencing was not met. For the following reasons, we affirm defendant's convictions but remand for resentencing.

FACTS

Defendant met O, a 29-year-old woman who is developmentally delayed, at a dance party. Defendant called himself on O's cell phone so that they would have each other's phone numbers. O and defendant had several phone calls in subsequent days, with O calling defendant 29 times.

A few days after the party, defendant told O that he wanted to speak face-to-face and asked her for her address, which she gave him. He then met O outside the apartment where she lived with her mother and brother. Defendant kissed O in front of some of O's relatives, which embarrassed O, and O said "no" and pushed him away. After that event, O's mother took the phone while O was talking to defendant and told defendant that O had never dated anyone and that she needed to meet him to decide if they could date. O's mother did not mention O's developmental delay, because she wanted to do it in person.

The next day, defendant and O talked on the phone, and defendant came to visit again. O was home alone. O had never had a boyfriend or learned about sex and thought that defendant just wanted to talk. Upon arrival, defendant asked O where they could have intercourse and began looking for a bedroom. In the bedroom, defendant began to kiss O, who pushed him away and told him to stop. Defendant asked O for oral sex, which she refused. Defendant then had sexual intercourse with O, during which O told defendant to leave her alone because it hurt, pushed him away, and told him to stop. When O said that her mother and brother

would be home soon, defendant stopped and left. At some point during the incident, defendant sucked on O's breasts, causing a hickey.

When O's mother got home around 9:30 p.m., she could see that O had been crying. O told her what had happened. O's mother spoke to defendant on O's phone, reminding him that she had wanted to meet him before anything further happened, asking him why he had done that to O, and telling him that he needed to come over to discuss what happened. Defendant initially said that he did not know what she was talking about, and O's mother falsely told him that there was a camera in O's bedroom. Defendant arrived about 20 minutes later to talk to O's mother with O present. Defendant did not deny what had happened, telling her that "what happened needed to happen," and he asked O's mother to "give" O to him and that he would take care of her. O's mother asked O if she wanted to go with defendant, and O said, "No, I don't want to see him again." At some point, O told her mother in front of defendant that "he hurt me" or "he forced me," to which defendant had no reaction at all. At another point, defendant said to O's mother that he was not going to deny what he did and that he knew it was wrong but still did it. Defendant initially told O's mother not to make a police report, because he was afraid and could go to jail for many years, but he later offered to go to the police station with her, which she declined, telling him that she was not going to report it. When O's mother questioned whether he was giving her his real name (he was), defendant showed her his identification, and she took a photograph of it.

The next morning, O's mother made a police report. O went to the hospital, where a nurse examined her, finding two vaginal tears and one suction injury (the hickey) in the center of O's chest. The nurse later testified that it was not possible to tell whether O's injuries resulted from consensual or nonconsensual sex. The nurse also took swabs of O's vagina and chest. The vaginal swabs came back negative for male DNA, while the chest swab came back positive for both O's DNA and male DNA. Meanwhile, O also was examined at CARES Northwest, where the doctor noted a "complete transection" of the hymenal tissue and bleeding into the

hymen and adjacent tissues, which was indicative of pene-tration and "likely force," although not conclusive of force.

The police contacted defendant, who agreed to come to the police station for an interview. At the station, defendant met with Detective Gay, who was assigned to investigate the case, and Officer Astorga, who served as a Spanish-English translator. Gay does not speak Spanish, and defendant does not speak English. At the outset of the interview, Astorga read defendant his *Miranda* rights. After some back-and-forth about why defendant had been summoned to the police station, defendant said, "[I]f I am being accused then I would really need a lawyer." A lengthy exchange ensued, complicated by inexact translation, about why defendant was there and whether he wanted a law-yer present. The interview ultimately proceeded without a lawyer.

Gay interviewed defendant for more than two hours. Defendant made several incriminating statements, includ-ing admitting that he had sexual intercourse with O; that he saw O's hips and legs trembling, which caused him to stop, but O told him to keep going; that O's facial expression made him think that O thought he was taking advantage of her, even though she did not say it; and that O pulled away and told him that it hurt, which caused him to lose his erec-tion and stop having sex with her. Defendant also consented to a DNA swab, the results of which were inconclusive, in that defendant was not ruled in or out as the source of the male DNA found on O's chest.

The state charged defendant with two counts of first-degree sexual abuse, ORS 163.427, based on the parking-lot kiss; two counts of first-degree rape, ORS 163.375, based on the sexual intercourse; two counts of first-degree sexual abuse, ORS 163.427, based on defendant kissing O's breasts; and two counts of attempted first-degree sodomy, ORS 163.405, based on defendant's request for oral sex. Each pair of crimes was charged with one alleging that defendant used forcible compulsion and one alleging that O lacked the capacity to consent due to a mental defect.

Before trial, defendant moved to suppress his police interview statements, arguing that he unequivocally invoked

his right to counsel and that the police improperly continued the interrogation. The trial court denied the motion, concluding that the invocation was equivocal and that defendant reinitiated the conversation.

Defendant waived jury and was tried to the court. After hearing the evidence, the trial court acquitted defendant of the four charges that were based on O's lack of capacity to consent, finding that the state had failed to prove lack of capacity, and it acquitted him of two other charges for lack of evidence. However, the court found defendant guilty of one count of first-degree rape by forcible compulsion (Count 3) and one count of first-degree sexual abuse by forcible compulsion (Count 4). The court explained that, "based on the facts in this case, specifically the physical evidence, as well as the testimony of the mother and of the victim, as to Counts 3 and 4, I do believe that there was a rape and I do believe that there was a sexual abuse as alleged in Count 4."

## MOTION TO SUPPRESS

Under Article I, section 12, of the Oregon Constitution and the Fifth and Fourteenth Amendments to the United States Constitution, a defendant has rights against self-incrimination, which include the right to assistance of counsel during custodial interrogation. *State v. Fink*, 285 Or App 302, 309, 395 P3d 934 (2017). In his first assignment of error, defendant argues that the trial court erred in denying his motion to suppress incriminating statements from his police interview, because that right was violated. We review the denial of a motion to suppress for legal error. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We are bound by the trial court's factual findings if there is constitutionally sufficient evidence to support them. *Id.*

The state argues that the trial court correctly denied defendant's motion to suppress or, alternatively, that any error was harmless. We need not resolve the former issue, because we agree that any error was harmless. *See State v. Davis*, 336 Or 19, 28, 77 P3d 1111 (2003) (recognizing that, under the Oregon Constitution, we must affirm, notwithstanding an error by the trial court, if the error was

harmless); *State v. Beaman*, 216 Or App 181, 182, 171 P3d 402 (2007), *rev den*, 344 Or 109 (2008) (recognizing that, under the federal constitution, a conviction is to be affirmed despite a trial court error if the error was harmless beyond a reasonable doubt).

The Oregon constitutional test for whether an error was harmless is whether there is little likelihood that it affected the verdict. *Davis*, 336 Or at 32. To make that determination, we review all pertinent portions of the record. *State v. Reed*, 299 Or App 675, 677, 452 P3d 995 (2019), *rev den*, 366 Or 382 (2020); *see also Beaman*, 216 Or App at 182 (stating that we consider the entire record, including the importance of the challenged evidence, whether it was cumulative, whether there is any corroborating evidence, and the overall strength of the case). Our inquiry focuses on the error's possible influence on the outcome of the trial; the question is not whether this court, sitting as factfinder, would regard the evidence of guilt as substantial and compelling. *Davis*, 336 Or at 32. It is defendant's burden to prove that the claimed error affected a substantial right, *i.e.*, was not harmless. *State v. Torres*, 206 Or App 436, 445, 136 P3d 1132 (2006).

Here, defendant contends that the alleged error in denying suppression was not harmless, given the incriminating statements that he made in the police interview that were admitted at trial. In response, the state relies on the trial court's express explanation of its guilty findings to argue that the court did not rely on defendant's statements to the police, such that any error in admitting them was unlikely to have affected the outcome.

When a defendant is tried to the court, the "'trial court's failure to mention contested evidence when explaining its disposition does not necessarily establish that any error in admitting that evidence was harmless.'" *Reed*, 299 Or App at 688-89 (quoting *State v. Klontz*, 257 Or App 684, 702, 308 P3d 214 (2013)). "Rather, the court's speaking verdict and other comments must be considered in context, taking into account the circumstances in which the court made its observations and the extent to which the court's explanation of its verdict sheds light on how it viewed the

evidence." *Reed*, 299 Or App at 689. Ultimately, "context is everything," which is why we sometimes conclude that the erroneous admission of evidence in a bench trial was harmless and other times conclude that it was not harmless. *Id.* at 691.

Our opinion in *Reed* contains a useful discussion of prior case law. *See id.* at 689-91. Of particular note here is *State v. Montgomery*, in which the defendant was tried to the court, convicted of first-degree sexual abuse, and, on appeal, assigned error to the denial of his motion to suppress his statements in a police interview. 217 Or App 139, 142, 174 P3d 1040 (2007), *rev den*, 344 Or 671 (2008). We affirmed, holding that any error in denying the motion to suppress was harmless given the trial court's speaking verdict. *Id.* at 143. In finding the defendant guilty, the court had stated, "Based upon what I have observed from [the testimony of the victim and the victim's mother], I would be convinced beyond a reasonable doubt of [defendant's] guilt. However, his statements are solid corroboration of the evidence \*\*\*." *Id.* (alterations in original). Thus, "the trial court explicitly found that it would have convicted defendant of the charges against him, whether or not his statements had been introduced into evidence, because the testimony of the victim and the victim's mother had convinced the court of defendant's guilt beyond a reasonable doubt." *Id.* Given that express finding, we concluded "that any potential constitutional error in admitting defendant's statements was harmless because it did not affect the trial court's—that is, the factfinder's—decision." *Id.*[1]

Here, defendant also was tried to the court. Sitting as factfinder, the trial court expressly identified the evidence on which it relied in finding defendant guilty on Counts 3 and 4: the physical evidence, O's mother's testimony, and O's testimony. The court did not mention defendant's statements

---

[1] By contrast, in *State v. Marrington*, 335 Or 555, 565-66, 73 P3d 811 (2003), we concluded that the trial court's erroneous admission of certain scientific evidence in a bench trial was not harmless, where the trial court did not expressly mention that evidence in announcing its decision, but the evidence went to a central factual issue in the case, and "there [was] nothing in the record to indicate that the testimony played no role in the trial court's assessment of the state's proof."

to the police, and, in context, we understand that omission to mean that the court did *not* consider those statements significant to its findings. *See Reed*, 299 Or App at 688-89 (emphasizing the importance of context in determining what meaning to assign to a trial court's failure to mention particular evidence in explaining its disposition after a bench trial).

Defendant did not confess to rape during his police interview, but he undoubtedly made some incriminating statements, and, in other circumstances, we might well conclude that there was more than a little likelihood that the admission of those statements affected the outcome. *Cf. State v. Esquivel*, 288 Or App 755, 762, 407 P3d 879 (2017) (recognizing the profound effect that a confession may have on a jury). Here, however, the trial court expressly identified the evidence that it found determinative, and nothing in the record causes us to doubt its explanation. *See Reed*, 299 Or App at 689 (discussing a prior case in which we concluded that the erroneous admission of evidence was harmless, given the court's explanation of its decision, "taken together with the absence of anything demonstrating that the trial court gave an inaccurate description of the basis for its verdict" (internal quotation marks and brackets omitted)). It bears noting that, in addition to the physical evidence and O's testimony, O's mother testified to incriminating statements that defendant made just hours after the incident—including telling her that he would not deny what he did and that he knew it was wrong but still did it—and his lack of reaction when O said that he had hurt or forced her. That evidence of other incriminating statements and conduct by defendant, separate from the statements that he claims should have been suppressed, tempers the likelihood that the court was influenced by defendant's statements to the police even if it did not perceive itself to be.

We therefore conclude that any error in admitting defendant's statements to the police was unlikely to have affected the verdict and, accordingly, was harmless for purposes of the Oregon Constitution. For similar reasons, we conclude that any error was harmless beyond a reasonable doubt for purposes of the federal constitution. *Beaman*, 216 Or App at 182.

SENTENCING

We next consider defendant's second assignment of error, in which he challenges the trial court's imposition of consecutive sentences for his two convictions. Defendant was sentenced to 100 months in prison on Count 3 (rape) and 75 months in prison on Count 4 (sexual abuse). We review the imposition of consecutive sentences for errors of law and are bound by the trial court's factual findings if they are supported by any evidence. *State v. Traylor*, 267 Or App 613, 615-16, 341 P3d 156 (2014).

When a defendant is convicted of two offenses arising out of a continuous and uninterrupted course of conduct, the trial court may impose consecutive sentences if the offense for which a consecutive sentence is contemplated either (1) was not merely an incidental violation of a separate statutory provision in the course of committing a more serious crime but, rather, indicated the defendant's willingness to commit more than one criminal offense; or (2) caused or created a risk of causing greater or qualitatively different loss, injury, or harm to the same or a different victim. ORS 137.123(5)(a) - (b).

In imposing consecutive sentences, the trial court explained that it was doing so because the sexual abuse— which consisted of defendant using forcible compulsion to suck on O's breasts—was not merely incidental to the rape— which consisted of defendant using forcible compulsion to have sexual intercourse with O. That is, the court found that defendant's conduct evinced a willingness to commit more than one criminal offense under ORS 137.123(5)(a). As both parties point out, the court's reason for imposing consecutive sentences varied from the state's argued basis for doing so. The state had argued for consecutive sentencing based on the sexual abuse and the rape causing qualitatively different harms under ORS 137.123(5)(b).

We have enumerated "several instructive, albeit hardly conclusive, principles" regarding ORS 137.123(5)(a). *State v. Anderson*, 208 Or App 409, 417, 145 P3d 245 (2006), *rev den*, 343 Or 33 (2007). First, whether a defendant evinced the requisite willingness to commit more than one criminal offense is an innately factual inquiry that depends on the

particular facts of each case and any inferences reasonably derived from those facts. *Id.* Second, that two crimes share a common motivation is not dispositive of whether one is merely incidental to the other. *Id.* Third, that a defendant could have committed one offense without committing the other generally demonstrates a willingness to commit both offenses, but that principle must be applied pragmatically, looking at the totality of circumstances instead of mechanically comparing the offenses' elements. *Id.* at 418-19. The ultimate question "is whether the record includes discrete facts supporting an inference that the defendant acted with a willingness to commit multiple offenses." *State v. Tajipour*, 299 Or App 219, 450 P3d 523 (2019), *rev'd on other grounds*, 366 Or 551, 466 P3d 58 (2020) (internal quotation marks omitted).

In *Tajipour*, we affirmed consecutive sentencing for the crimes of sexual abuse and sodomy where the defendant sexually assaulted a female passenger riding in the passenger seat of his cab. 299 Or App at 220. In an incident that lasted nearly an hour, the defendant first forcibly touched the victim's breast and vagina over "many minutes" as he drove around North Portland. *Id.* at 229. He then parked in front of the victim's house, where he forcibly kissed her and forced her to engage in oral sodomy. *Id.* On that record, we concluded that the trial court could permissibly find that the defendant's touching of the victim's breast and vagina was not incidental to his later act of sodomy. *Id.* In reaching that conclusion, we rejected a premise implicit in one of the defendant's arguments—that a person who sexually assaults another person necessarily has only "a single, undifferentiated intention during the entire episode" and cannot be found to have intended to commit distinct criminal acts. *Id.* at 229-30.

Defendant argues that this case is distinguishable from *Tajipour*, because, in this case, defendant's overriding purpose was to have sexual intercourse with O, the record is silent as to whether defendant sucked on O's breasts *before* or *during* sexual intercourse, and everything happened in a shorter time period than in *Tajipour*. In response, the state emphasizes that defendant easily could have had sexual intercourse with O without sucking on her breasts or,

conversely, could have sucked on O's breasts without having sexual intercourse with her. The state argues that defendant's choice to commit both acts indicated a willingness to commit multiple offenses and that to conclude otherwise would require accepting the implicit argument that we rejected in *Tajipour*, *i.e.*, that a sexual assailant necessarily has singular intent in a single episode.

We agree with defendant that the evidence in this case was legally insufficient to establish his willingness to commit more than one offense, specifically because there was no evidence that the act of breast-sucking was temporally or qualitatively distinct from the act of sexual intercourse. *See id.* at 228-29 (evidence that offenses were "temporally or qualitatively distinct" may support an inference that the commission of one was not merely incidental to the commission of the other). We emphasize the importance of considering the totality of the circumstances, including taking a pragmatic approach to the consideration whether it would have been possible for the defendant to commit one offense without the other. As noted in *Anderson*, 208 Or App at 418, if a defendant literally "[can]not commit one crime without necessarily committing the other against the same victim, the convictions must merge, yielding a single sentence," in which case consecutive sentencing would not even be at issue. Therefore, one must be pragmatic, not overly literal, as to that consideration.

At least in these circumstances, the fact that the two types of sexual contact may well have occurred simultaneously precludes the necessary finding that the breast-sucking was *not* incidental to the more serious crime of rape. *See* ORS 137.123(5)(a) (requiring finding that the offense "was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense"). It is certainly not the case that a single incident of sexual assault with multiple aspects necessarily evinces a defendant's intent to commit only one sexual offense—that is the implicit *per se* argument that the defendant made and that we rejected in *Tajipour*. But neither is it the case that a single incident of sexual assault with multiple aspects

necessarily allows a finding of intent to commit multiple sexual offenses—that is the implicit *per se* argument that the state makes in this case. Rather, the inquiry is intensely fact dependent. *Id.* at 417. In some circumstances, two criminal offenses being committed simultaneously would not preclude application of ORS 137.123(5)(a). In this case, however, the lack of evidence as to the timing of events precludes the necessary finding to apply ORS 137.123(5)(a). *Cf. State v. Norris*, 281 Or App 512, 515, 383 P3d 944 (2016) ("Because the record lacks any discrete facts evincing defendant's willingness to commit more than one criminal offense, the trial court erred in relying on ORS 137.123(5)(a) to impose a consecutive term of imprisonment for Counts 2 and 3.").

Having concluded that the trial court erred in imposing consecutive sentences based on ORS 137.123(5)(a), we must decide the appropriate disposition. The state urges a remand for the trial court to apply ORS 137.123(5)(b). We agree that that is the correct disposition. *See Norris*, 281 Or App at 515 (holding that the trial court erred in imposing consecutive sentences based on ORS 137.123(5)(a) and noting that the trial court could address ORS 137.123(5)(b) during resentencing). Accordingly, we remand for the trial court to decide whether ORS 137.123(5)(b) applies and, if it concludes that it does, to exercise its discretion whether to impose consecutive sentences on that basis.

Remanded for resentencing; otherwise affirmed.