Argued and submitted December 22, 2021; convictions on Counts 3, 4, and 5 reversed and remanded for entry of judgment of conviction for one count of first-degree sexual abuse, remanded for resentencing, otherwise affirmed
July 13, 2022

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# GABRIEL MOSCOTE-SAAVEDRA,
*Defendant-Appellant.*

## Washington County Circuit Court
## 18CR84521; A173012

514 P3d 1169

Defendant appeals a judgment of conviction, arguing that the trial court erred in failing to merge the guilty verdicts for three counts of first-degree sexual abuse into a single conviction because there was no evidence of a "sufficient pause," ORS 161.067(3), between each act. *Held*: The trial court erred in entering three separate sexual abuse convictions. The state failed to present evidence of either a break between some of the acts underlying the sexual abuse charges, or, where there was evidence of a break, failed to present evidence from which to infer the temporal duration of the break or other significant intervening event such that defendant was afforded the opportunity to renounce his criminal intent between each act of sexual abuse. Further, defendant's intervening sexual conduct did not establish a "sufficient pause" between his acts of sexual abuse because there was an insufficient level of detail about that intervening conduct from which to infer that the intervening conduct was temporally or qualitatively distinct from his acts of sexual abuse.

Convictions on Counts 3, 4, and 5 reversed and remanded for entry of judgment of conviction for one count of first-degree sexual abuse; remanded for resentencing; otherwise affirmed.

Janelle F. Wipper, Judge.

Emily P. Seltzer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Convictions on Counts 3, 4, and 5 reversed and remanded for entry of judgment of conviction for one count of first-degree sexual abuse; remanded for resentencing; otherwise affirmed.

**ORTEGA, P. J.**

Defendant appeals a judgment of conviction for three counts of first-degree sexual abuse (Counts 3, 4, and 5), attempt to commit first-degree rape (Count 6), and first-degree burglary (Count 7). A jury returned unanimous verdicts on those charges and on two burglary offense subcategory factors. Defendant raises three assignments of error. In his third assignment of error, he argues that the trial court erred in instructing the jury that it could return nonunanimous guilty verdicts on the charges and offense subcategories, asserting that the error was structural or alternatively not harmless. Although the court erred in giving the nonunanimous jury instruction, *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), the error is not reversible because it is not structural and, as to unanimous verdicts, is harmless beyond a reasonable doubt. *State v. Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020); *State v. Enloe*, 316 Or App 680, 681-82, 502 P3d 1213 (2021) (*Ramos* jury unanimity requirement applies to jury findings on subcategory factors); *State v. Huynh*, 315 Or App 456, 458, 500 P3d 767 (2021) (unanimous jury verdicts on sentence-enhancement facts is harmless under *Flores Ramos*).

In combined assignments of error one and two, defendant argues that the trial court erred in failing to merge the guilty verdicts on Counts 3, 4, and 5 into a single conviction, because the sexual contacts occurred during the same criminal episode without evidence of a "sufficient pause" between each act. *See* ORS 161.067(3) (when the same conduct or criminal episode violates one statutory provision against one victim, allowing for as many separably punishable offenses as there are violations if each violation is separated from the other by a "sufficient pause"). The state concedes that the court erred in relying on the consecutive-sentencing statute, ORS 137.123, and not the merger statute, ORS 161.067, in deciding the merger issue. However, in the state's view, the record does support a determination that there was a "sufficient pause" between each act of sexual abuse and therefore asks us to allow the court to reconsider defendant's merger argument on remand under the correct legal standard. Although we agree with the state

that the court erred in relying on the wrong legal standard, we agree with defendant that, even under the correct one, the record does not contain the requisite evidence to support a "sufficient pause" between each instance of sexual abuse. We therefore reverse and remand the convictions on Counts 3, 4, and 5 for entry of a single conviction and otherwise affirm.

　　We begin with the undisputed background facts, providing more detailed facts in our analysis. One night when R was asleep in her bed, she was awakened by a man, later identified as defendant, climbing into her bed. While armed with a knife[1] and holding his hand over her mouth and nose, he committed various acts of sexual assault set forth later in greater detail. The ordeal lasted approximately 30 minutes and ended after defendant ejaculated and ran out of R's apartment.

　　For that conduct, defendant was charged with numerous crimes, including first-degree sodomy (anal sexual intercourse), ORS 163.405 (Count 1); first-degree sexual penetration by force (penetrating the vagina with his fingers), ORS 163.411 (Count 2); attempted first-degree rape by force (vaginal intercourse), ORS 163.375 (Count 6); first-degree burglary, ORS 164.225 (Count 7); second-degree assault, ORS 163.175 (Count 8); and unlawful use of a weapon, ORS 166.220 (Count 9). Defendant was also charged with three counts of first-degree sexual abuse by force, ORS 163.427,[2] based on the touching of different body

---

[1] Defendant was acquitted of unlawful use of a weapon based on his use of a "knife" and the offense subcategory factor of his use or threatened use of a weapon related to other charges. However, the parties do not dispute for purposes of appeal that defendant was holding a knife during the sexual assault.

[2] Although ORS 163.427 was amended following the pertinent events of this case, we refer to the current version throughout the opinion because the amendment does not affect our analysis. *See* ORS 163.427(1)(a)(B) (2019), *amended by* Or Laws 2021, ch 82, § 7. As pertinent here, first-degree sexual abuse includes subjecting another person to sexual contact by forcible compulsion. ORS 163.427(1)(a)(B). "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(5). Although ORS 163.305 was amended following the pertinent events of this case, we refer to the current version because the quoted language remains the same. ORS 163.305 (2019), *amended by* Or Laws 2021, ch 82, § 1.

parts: defendant touching R's breast (Count 3); defendant touching R's buttocks (Count 4); and defendant forcing R to touch his penis (Count 5). A jury convicted defendant of the three counts of first-degree sexual abuse, attempted rape, and first-degree burglary. The court granted the state's motion to dismiss the second-degree assault charge (Count 8) and defendant was acquitted on Counts 1, 2, and 9.

Related to sentencing, defendant argued that the verdicts on all three sexual abuse counts should merge for entry of a single conviction, because they occurred during the same criminal episode, involved violations of the same statutory provision against the same victim, and there was no evidence of a sufficient pause between each act. The state disagreed. Relying on the consecutive-sentencing statute, ORS 137.123, it argued that the court was permitted to enter separate convictions based on each act. The trial court denied defendant's motion, entered separate convictions for each count of sexual abuse, and ordered the prison terms on Counts 4 and 5 to run consecutively to the prison term on Count 3. However, the court ordered the prison term on the attempted-rape count to run concurrently to all other counts, finding that it "does merge for sentencing purposes."[3]

On appeal, defendant renews his merger argument made below. The parties agree that defendant's conduct was part of one criminal episode and involved repeated violations of the same statutory provision against the same victim. The parties also agree that the court erred but disagree as to its precise error. Defendant contends that the court erred in failing to merge the guilty verdicts on the sexual abuse counts without evidence of a "sufficient pause." The state, however, asserts that the court's error was in basing its merger ruling on the standard applicable to consecutive sentencing, ORS 137.123, and not merger, ORS 161.067(3). According to the state, the appropriate remedy is to allow the court to reconsider the merger issue on remand under the correct legal framework, because it views the record as

---

[3] The court ordered the prison term for the first-degree burglary conviction (Count 7) to run consecutively to all other counts.

establishing a "sufficient pause." The state concedes, however, that a remand is not required if we determine that the record does not, as a matter of law, allow for entry of a separate conviction for each act of sexual abuse, even applying the correct legal framework.

We begin with whether the court applied ORS 161.067, applicable to merger, or ORS 137.123, applicable to consecutive sentencing, when it decided the merger issue. ORS 161.067, Oregon's "antimerger" statute, governs the merger of guilty verdicts. As relevant, ORS 161.067(3) provides that when

> "the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

ORS 161.067(3).

As relevant, ORS 137.123(5)(a) permits a court to impose consecutive terms of imprisonment for "separate convictions arising out of a continuous and uninterrupted course of conduct" if it finds

> "[t]hat the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense[.]"

Defendant argued in a written sentencing memorandum that the three guilty verdicts for sexual abuse must merge into a single conviction under ORS 161.067(3), because defendant's conduct occurred during the same criminal episode without evidence of a temporal break or other significant intervening event to support a determination that a "sufficient pause" occurred between each act of sexual abuse.

For support, defendant cited *State v. Nelson*, 282 Or App 427, 429, 431, 386 P3d 73 (2016) (concluding that multiple guilty verdicts for sexual abuse based on touching of different body parts merge into a single conviction for first-degree sexual abuse because there was no evidence of a sufficient pause, ORS 161.067(3), between each act of abuse), and *State v. Dugan*, 282 Or App 768, 773, 387 P3d 439 (2016) (same).[4]

At the outset of the sentencing hearing, the trial court acknowledged having read defendant's sentencing memorandum and recognized that his arguments and cases cited in support "goes to whether or not the court determines that there was a sufficient pause." Although defendant did not refer to the statute in his written merger argument, the state's position was that defendant's written merger analysis was legally incorrect under ORS 137.123. In rejecting defendant's merger argument, the court ruled that, given the facts of the case, the crimes were "separate acts" and "not the same criminal episode" under ORS 137.123.

On appeal, defendant argues that, although the court incorrectly denied his merger motion, it relied on the correct statute when ruling. He points to the court's oral finding that defendant's conduct constituted "separate acts," which, defendant contends, is grounded in the text of the statute applicable to merger. *See* ORS 161.067(3) (there are "as many *separately* punishable offenses as there are violations, except that each violation *** must be *separated* from other such violations by a sufficient pause" (emphases added)). Defendant also points to the court's use of the phrase "same criminal episode" as support for its position, noting that that phrase appears in the merger statute but not the consecutive-sentencing statute.

According to the state, the court's finding that all of the offenses were "separate acts" and "not the same

---

[4] Defendant also cited *State v. Perez-Cardenas*, 296 Or App 881, 440 P3d 121 (2019), *rev'd on recons on other grounds*, 305 Or App 309, 471 P3d 158 (2020). However, after defendant's sentencing hearing, we reversed the defendant's conviction in that case on reconsideration under *Ramos*, remanded the case for a new trial, and withdrew our prior opinion in which we accepted a state concession that the court had plainly erred in failing to merge the guilty verdicts for multiple counts of sexual abuse without evidence of a sufficient pause. *See id.* at 883-84.

criminal episode" establishes that it applied the wrong statute, because, in its view, those findings would support imposition of consecutive sentences under ORS 137.123, but not merger under ORS 161.067(3). The state notes that the court could not have found that the offenses occurred in "separate criminal episodes" under the correct legal interpretation of that term and that it appeared to be "using that language as shorthand for the standard argued by the prosecutor" under ORS 137.123(5)(a). We agree with the state.

The court's ruling tracked the state's framing of the merger inquiry, which was incorrectly grounded in the consecutive-sentencing statute. The state argued that what mattered for purposes of merger was whether the evidence showed that one crime was "incidental" to the other or whether it established a "willingness on the part of the defendant to engage in additional *different criminal behavior*." (Emphasis added.) It further contended that one of the criteria for merger was whether each act of touching "cause[d] a *separate* harm to the victim." (Emphasis added.) Applying that legal framework, the state asserted that the counts did not merge because defendant could commit each act of sexual abuse independent from the other and did so with the purpose of "becoming sexually aroused and sexually gratified and using the victim for *separate*—sexual gratification in *three separate* ways." (Emphases added.) Those arguments are grounded in the text and legal standard of the consecutive-sentencing statute, which the state explicitly referenced multiple times throughout the hearing as support for its merger arguments. *See* ORS 137.123(5)(a) (allowing for consecutive sentences if court finds the criminal offense "was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's *willingness* to commit *more than one criminal offense*" (emphases added)). In its oral ruling, the court found that defendant's conduct underlying the charges constituted "separate acts," also citing the consecutive-sentencing statute. Moreover, it stated that "more than just a concurrent sentence" was called for. Those findings and conclusions mirror the state's language and framing of the legal inquiry based on the consecutive-sentencing statute and reflect that, in

rejecting defendant's merger argument, the court relied on the wrong legal standard.[5]

We do not agree with defendant that the court's use of "criminal episode" in its oral ruling supports that it was relying on the merger statute. Although defendant is correct that the phrase "criminal episode" is contained in the text of the merger statute but not the consecutive-sentencing statute, the court's use of that phrase does not establish that it was relying on the merger statute, when viewed in light of (1) its explicit reference to ORS 137.123; (2) its statement indicating that "concurrent" sentences would not be appropriate; and (3) the case law using "criminal episode" language as essentially equivalent to the language in ORS 137.123 concerning "a continuous and uninterrupted course of conduct." *See, e.g.*, *State v. Wolfgang*, 278 Or App 781, 792, 379 P3d 759, *rev den*, 360 Or 465 (2016) ("'criminal episode' has at times been used interchangeably with ORS 137.123(2)'s reference to 'same continuous and uninterrupted course of conduct,'" citing cases).

The court erred by relying on the consecutive-sentencing statute in determining merger. A court must first determine whether verdicts merge because, if they do, the result is a *single conviction*, which would make it unnecessary to determine whether the court could impose any prison terms on *multiple convictions* concurrently or consecutively. *See State v. Sanchez-Chavez*, 312 Or App 701, 712, 495 P3d 197, *rev den*, 369 Or 110 (2021) ("consecutive sentencing would not even be at issue" where "convictions must merge, yielding a single sentence"). The court's reliance on

_____

[5] The court's determination that it was required to impose the prison term on the attempted-rape count concurrently to the prison terms on the other counts based on its finding that the attempted rape "does merge for sentencing purposes" also supports our conclusion. The phrase "merge for sentencing" conflates merger, which occurs upon entry of conviction, with consecutive sentencing, which occurs upon imposition of sentence. *See State v. Mason*, 241 Or App 714, 718 n 4, 250 P3d 976 (2011) ("[T]he phrase 'merged for sentencing purposes' is a misnomer and should never be used because it improperly conflates two distinct parts of the criminal process: the entry of convictions and the imposition of sentences. The concept of merger relates to the former and is controlled by ORS 161.067. The imposition of consecutive or concurrent sentences relates to the latter and is controlled by ORS 137.123. The two statutes operate independently. *See State v. White*, 346 Or 275, 279 n 4, 211 P3d 248 (2009); *State v. Merrick*, 224 Or App 471, 472, 197 P3d 624 (2008).").

the consecutive-sentencing statute instead of the merger statute in making its merger ruling was therefore error. *See State v. Ortiz-Rico*, 303 Or App 78, 82 n 5, 462 P3d 741, *rev den*, 366 Or 827 (2020) ("We have held that it is an error for a trial court to consider consecutive sentencing pursuant to ORS 137.123 without first making a merger determination under ORS 161.067.").

We turn to whether the record supports a "sufficient pause" between each act of sexual abuse within the meaning of ORS 161.067(3), reviewing for legal error. *See State v. Campbell*, 265 Or App 132, 134, 333 P3d 1220 (2014) (merger ruling reviewed for legal error).

The phrase "sufficient pause" under ORS 161.067(3) "means a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords a defendant the opportunity to renounce his or her criminal intent." *State v. West-Howell*, 282 Or App 393, 397, 385 P3d 1121 (2016), *rev den*, 361 Or 312 (2017) (internal quotation marks omitted). In order "to support the entry of multiple convictions for the same offense under ORS 161.067(3), one crime must end before another begins, *and* each crime must be separated from the others by a sufficient pause in the defendant's criminal conduct to afford him an opportunity to renounce his criminal intent." *Id.* at 397-98 (emphasis in original). "In determining whether a sufficient pause occurred, a court must consider the evidence regarding the duration of any pause, what happened during the pause, and whether the defendant's criminal conduct was qualitatively different before and after the pause." *State v. Lasheski*, 309 Or App 140, 146, 481 P3d 966 (2021) (internal quotation marks omitted). The presumption is that statutory violations based on the same conduct or criminal episode merge unless the circumstances outlined in ORS 161.067 are present. *State v. Gensitskiy*, 365 Or 263, 281 n 5, 446 P3d 26 (2019). It is the state's burden to prove the existence of a sufficient pause. *State v. Barton*, 304 Or App 481, 499, 468 P3d 510 (2020).

R described the sexual assault at trial. She testified that defendant crawled into her bed, pulled down her pants, and then he "reached around to the front of me and put his

hand inside of [my vagina]." R continued, "Then I heard his pants being adjusted and *** he grabbed my hand and he put it on his penis, and I snatched my hand away and was yelling 'no,'" and then he began "rubbing his penis *** against my butt and trying to enter me and *** that didn't work." The district attorney sought R's clarification of what she meant by it "didn't work," asking, "specifically [what] was he trying to do and why was he unsuccessful in doing it?" R answered:

"[R:]   He *** lost his erection.

"[District Attorney:]   Okay.

"[R:]   And that's when he had then like bent down and *** licked my back side—

"*****

"[District Attorney:]   [R,] backing up a little bit. I want you to be specific *** it's okay. Did he try to have sex with you?

"[R:]   Yes.

"[District Attorney:]   Was he successful in doing that?

"[R:]   No.

"[District Attorney:]   And why was he unsuccessful with doing that?

"[R:]   Because he *** couldn't keep the erection.

"[District Attorney:]   What happened next?

"[R:]   Then *** he was still trying to *** regain the erection and he *** grabbed my breasts *** and at the same time I was trying to like keep his hands off my mouth, so that I could breathe, and screaming and—while he was telling me, 'Be quiet. Just shh, shh, shh.'"

The prosecutor returned to asking R about what occurred when defendant attempted to penetrate her vagina:

"[District Attorney:]   When [defendant] *** attempted to have sex with you, but was unsuccessful because he couldn't maintain his erection, was his penis against your bare vaginal area?

"[R:]   Not the vaginal area. It was—because he was behind me and I have a larger booty, but it—he was trying to.

"[District Attorney:]   So there was an effort made from behind, but he couldn't quite reach because he didn't have an erection and because of the positioning and size of your body?

"[R:]   Yeah.

"[District Attorney:]   Okay. Did you believe that was the attempt, that was the purpose was to try to have sex with you—

"[R:]   Oh, yes."

The district attorney reminded R that they had left off with defendant, just before grabbing her breasts, trying to regain his erection, and then asked, "What happened next?" R testified, "After he had licked me, then the erection came back," and he positioned his penis against her buttocks, causing both his hand and penis to touch her anus. He then proceeded to rub his penis against her anus "[t]rying to get entry" until he ejaculated and left.[6] During the assault, R was on her side while defendant "spoon[ed]" her from behind, holding a knife to her side and his hand over her mouth and nose. R made various attempts throughout the episode to resist the attack, including several times yelling "no" and trying to remove defendant's hand from her mouth. At the point defendant ejaculated, R was "[s]till struggling" and "his hand was still over [her] mouth" and the "knife was on [her] side."

On appeal, defendant argues that the trial court erred in failing to merge the three guilty verdicts for sexual abuse into a single conviction without evidence of a "sufficient pause." According to defendant, each act involved the sequential or overlapping touching of different body parts without evidence of a temporal break or significant event between each act. Relying on *State v. Bradley*, 307 Or App

---

[6] On cross-examination, R backtracked in part, stating that she was not positive that defendant's penis touched her anus but confirmed it touched her buttocks. For that act of touching, defendant was charged with but acquitted of first-degree sodomy based on the allegation that he "knowingly, by forcible compulsion, engag[ed] in anal sexual intercourse."

374, 477 P3d 409 (2020), *adh'd to as modified on recons*, 309 Or App 598, 483 P3d 717 (2021), defendant asserts that any additional intervening sexual conduct between the incidents of sexual abuse was not enough to establish a "sufficient pause." Defendant compares this case to *Bradley*, asserting that defendant's conduct amounted to a series of continuous sexual offenses and acts without any break in between, and that each act was directed toward defendant's intent to engage in sexual conduct with R. Thus, according to defendant, "*Bradley* holds that additional sexual contact that is intertwined with and directed at the overall goal of sexual abuse does not create a sufficient pause that permits the defendant to renounce his criminal intent."

The state disagrees. With regard to the first two acts of sexual touching underlying the sexual abuse charges, the state contends that, unlike *Bradley*, the evidence establishes a temporal break in that the first act—defendant causing R to touch his penis—terminated when R pulled her hand away. Further, according to the state, evidence that defendant had to change positions to begin the second act—bending down to lick R's buttocks—allows for the inference of a more meaningful temporal break beyond simple acts of sequential touching. The state also contends that defendant's conduct underlying the second act of sexual abuse—touching R's buttocks with his tongue—was qualitatively different conduct creating a "sufficient pause," because it was done for the different purpose to restore his erection.

With regard to the second and third acts, the state concedes that the record allows for less of an inference of a temporal break because it is possible that those acts were happening simultaneously. However, it contends that defendant's act of licking R's buttocks was qualitatively different conduct than his next act of touching her breast because it was done for a different purpose—to restore his erection. We disagree with the state.

As a preliminary matter, it is unclear from the record which of defendant's acts supported the jury's conviction for sexual abuse based on defendant's touching of R's buttocks (Count 4). In all, there were four incidents of defendant's touching of R's buttocks: defendant's initial act

of rubbing his penis against her buttocks at the time of the attempted rape, his act of touching with his tongue that followed, and his final two simultaneous acts of touching of R's anus with his penis and hand.[7] The state did not specify, either in the indictment or at trial, which of defendant's acts of touching R's buttocks supported the related sexual abuse charge, and the record does not indicate which of those acts supported the jury's verdict. On appeal, defendant addresses only two of the acts: defendant's initial act of rubbing his penis against R's buttocks accompanying the attempted rape and his touching with his tongue. The state addresses only one: defendant's touching of R's buttocks with his tongue.[8] Because our task is to review the sufficiency of the evidence to support the court's merger ruling, and we have no way to determine which of those acts the jury relied on to support its verdict, we consider all of defendant's acts of touching of R's buttocks in our merger analysis, addressing each of those acts in sequential order. Further, we combine our discussion of the pause between defendant's first two acts of touching of R's buttocks—with his penis and tongue—and his other acts—causing R to touch his penis and touching her breasts. We end by discussing the pause between his final two acts of touching of R's buttocks—touching her anus with his penis and hand—and his other acts—causing R to touch his penis and touching her breasts.

We begin with the break between defendant causing R to touch his penis, the first act of sexual abuse, and the initial instance of defendant's rubbing his penis against R's buttocks that followed. Although there was evidence of a temporal break between those acts, the state failed to present evidence of the duration of that break, or of any other significant intervening event, which created a sufficient pause allowing defendant the opportunity to renounce his criminal intent. R testified that she "snatched [her] hand

---

[7] As previously noted, the state relied on R's testimony that defendant rubbed his penis against her anus to support the first-degree sodomy charge.

[8] As reflected in its brief, the state understood defendant's attempt to penetrate R's vagina, which included defendant's first act of rubbing his penis against her buttocks, to have occurred at the outset of the attack, *before* defendant's commission of any of the acts of sexual abuse. However, the state's understanding of the sequence of events is inconsistent with R's trial testimony and defendant's recitation of the record on appeal.

away" from defendant's penis and he then began touching her buttocks. In removing her hand, R effectively terminated the first act of sexual abuse, establishing a temporal break between the first and second acts of touching, regardless of which of defendant's acts of touching of her buttocks supported that related sexual abuse charge. However, R's testimony described defendant as beginning the second act, rubbing his penis against her buttocks, immediately after she terminated the first act and without any other change in circumstance, which establishes only sequential acts of touching. Without more, that evidence does not support a "sufficient pause" between those acts. *See Nelson*, 282 Or App at 447 (concluding that the court erred in entering multiple convictions for each act of sexual abuse "where the record demonstrates only that defendant's acts occurred in sequence over a brief period of time *** in the confined space of the bathroom, without interruption by any significant event, and without a pause in the defendant's aggression" (internal quotation marks omitted)). We disagree with the state that R's verbal and physical attempts to resist the attack throughout the assault, including her pleas for defendant to stop and attempts to remove his hand from her mouth, created a "sufficient pause." *See Lasheski*, 309 Or App at 149 (a victim's attempts to escape a sexual assault by "slight[]" movements or other actions that "expressly or implicitly communicate a desire for the defendant to stop an attack and the defendant nonetheless continues" are not events, without more, that create a sufficient pause between acts of sexual abuse for purposes of merger).

The record is similarly deficient if the second act was defendant's licking R's buttocks. R testified that after she terminated the first act of sexual abuse, defendant started "rubbing his penis *** against my butt and trying to enter me" but lost his erection, "[a]nd that's when he had then like bent down and *** licked my back side." R also explained that, although his penis never touched her vagina, she understood defendant to be attempting to penetrate her vagina with his penis, and that those attempts occurred while they remained in the same position—R laying on her side with defendant behind her. Although that testimony allows for the inference of a greater temporal

break than sequential acts of touching because it described defendant as engaging in intervening sexual acts, it nonetheless lacks the necessary detail about the timing or nature of the intervening conduct. It does not describe, for example, how long defendant engaged in that conduct or what precisely defendant did, other than rub his penis against her buttocks, when he attempted to penetrate her vagina. On this record, it would require speculation to infer that defendant's attempted-rape conduct was something other than, or differed markedly from, his act of rubbing his penis against R's buttocks, acts which could have occurred over a matter of seconds or minutes. *See Lasheski*, 309 Or App at 148 (concluding that the victim's testimony that defendant woke her from sleep several times by "touching her" and, when she finally was fully awake, he was "still" touching her; that he touched her vagina; and that, after she rolled over, he put his hands underneath her pants and touched her "backside," did "not support any finding about the temporal relationship between [the touching of the vagina] and the other sexual abuse to which defendant subjected her" and therefore failed to establish a sufficient pause between sequential acts of touching).

Contrary to the state's suggestion, we do not agree that a factfinder could infer anything about the temporal duration of the break based on defendant's simple act of bending down to initiate the second act of sexual abuse. *Cf. State v. Zachery*, 304 Or App 476, 479, 467 P3d 827 (2020) ("Standing alone, a change in the means of communication during a criminal episode of this nature—from text messages to voicemails left on a cell phone and home phone—does not demonstrate a 'sufficient pause' between the acts * * *."); *State v. Sanders*, 185 Or App 125, 128-30, 57 P3d 963 (2002), *adh'd to as modified on recons*, 189 Or App 107, 74 P3d 1105 (2003), *rev den*, 336 Or 657 (2004) (rejecting the state's argument that any measurable duration of a pause could be inferred from the fact that "the victim had enough time to hold up her arm to ward off the blow").

For the same reason, defendant's intervening conduct—rubbing his penis against her buttocks and attempting to penetrate her vagina—was not qualitatively different in nature from his acts of sexual abuse such that it created

a "sufficient pause." *West-Howell* addressed the sufficiency of a pause between sexual crimes where the defendant engages in other intervening criminal conduct. 282 Or App at 399. In that case, the defendant sodomized the victim twice and, in between, strangled and attempted to rape her. The first sodomy occurred on the floor over a 10-minute period. The defendant then moved the victim to the bed and strangled her until she lost consciousness and attempted to rape her after she awoke. After that, he moved the victim back onto the floor and sodomized her again. We concluded that that evidence supported a "sufficient pause" between the two acts of sodomy in part because of evidence that they "were separated by assaultive conduct of a different nature." *Id.* at 400-01.

Here, the intervening conduct and events are distinct from *West-Howell*. That case "involved two counts of sodomy separated by a series of other acts and movements, including the defendant moving the victim to a bed, strangling her to the point of unconsciousness, attempting to rape her on the bed after she regained consciousness, and then moving her back to the floor to perform oral sex." *State v. Moore*, 319 Or App 136, 148, 510 P3d 907 (2022). In contrast, this case involves a series of sexual assaults without evidence of a durational break between each act, and the entire assault occurred while R was lying on her side and defendant was behind her, holding his hand over her mouth and nose and a knife at her side. Further, in *West-Howell*, the intervening conduct was "qualitatively different" from the incidents of sodomy because it was "assaultive conduct of a different nature." 282 Or App at 400. Here, the intervening conduct between the acts of sexual abuse was defendant rubbing his penis against R's buttocks and his accompanying attempt to penetrate her vagina. Without some evidence of the duration of the break or additional details about the intervening conduct, the evidence fails to establish a "sufficient pause" based on that intervening conduct that was "so marked in scope or quality that it afford[ed] *** defendant the opportunity to renounce his *** criminal intent" to commit his acts of sexual abuse. *State v. Huffman*, 234 Or App 177, 184, 227 P3d 1206 (2010).

Nevertheless, we do not agree with defendant that *Bradley* is sufficiently similar. 307 Or App 374. There, the

defendant was convicted of two counts of first-degree sexual abuse, and, in between those acts, he committed a sodomy. The entire episode was "very short" and took place while the victim and defendant were seated on the floor of a garage. The defendant showed the child-victim how to hold his penis, told her to touch it, told her to put her mouth on it, and then touched her vagina with his hand. *Id*. at 376-77.

We concluded that the record did not establish a "sufficient pause." We explained that, on that record, "no reasonable factfinder could conclude that there was any temporal break or pause in defendant's aggression between the two acts of sexual abuse such that one crime ended before another began." *Id*. at 381. Rather, "the evidence showed that the first act of sexual contact that initiated the abuse—defendant causing the victim to touch his penis—assisted defendant in the commission of the sodomy," and was therefore "sufficiently intertwined with defendant's commission of the sodomy such that, once defendant initiated the sodomy, the sexual abuse was still ongoing." *Id*. at 383. As to the relationship between the intervening sodomy and the second act of sexual abuse, we held that "a trier of fact could only speculate that [the first act of sexual abuse and sodomy] had ceased * * * at the time defendant initiated the final act of sexual contact." *Id*. at 383-84. We emphasized:

> "We do not hold that simply because the intervening conduct in this case falls within the same broad category of the crimes sought to be merged (*e.g.*, 'sexual conduct'), those crimes must merge under ORS 161.067(3). Rather, we conclude that when, as here, the intervening conduct was intertwined with the conduct underlying the crimes sought to be merged and assisted defendant in achieving his overall criminal objective of sexually abusing the victim, that the intervening conduct was of a similar nature is relevant to the sufficiency of the pause issue and, thus—with no other evidence that one crime ended before the other began—merger is precluded."

*Id*. at 386.

We reject any suggestion that *Bradley* announced a broad legal principle that any time a defendant engages in intervening sexual conduct between acts of sexual abuse,

that intervening conduct cannot, as a matter of law, create a "sufficient pause" because the acts are all directed toward the same goal of sexually abusing the victim. Rather, our holding in *Bradley* rested on the absence of evidence to establish *any* temporal break between the acts of sexual abuse and the intervening sodomy. There, it was relevant that the intervening act of sodomy was sexual in nature because "the evidence showed that the first act of sexual contact that initiated the abuse—defendant causing the victim to touch his penis—*assisted* defendant in the commission of the sodomy." *Bradley*, 307 Or App at 383 (emphasis added). In other words, that evidence provided evidence of the *absence* of a temporal break between those acts. Here, by contrast, the evidence establishes a temporal break between the first and second acts of sexual abuse. Further, our statement in *Bradley* that the intervening sodomy was "intertwined" with the acts of sexual abuse was an alternative expression of our conclusion that, consistent with the trial court's express factual finding, the preceding act of sexual abuse aided defendant in committing the sodomy. *See id*. at 383 (summarizing trial court's finding that "'it was clear that there was progression being used by the defendant to get the defendant to ultimately perform the sodomy,'" and stating, "[i]n other words, the sexual abuse was sufficiently intertwined with defendant's commission of the sodomy such that, once defendant initiated the sodomy, the sexual abuse was still ongoing"). *Bradley* did not hold that additional sexual contact that is intertwined with and directed at the overall goal of sexually abusing a victim can never, as a matter of law, create a "sufficient pause." Here, our conclusion that defendant's intervening conduct did not create a "sufficient pause" is based on the absence of evidence from which to infer that those acts were temporally or qualitatively distinct from the sexual abuse acts. We therefore need not and do not decide how, if at all, those intervening acts were intertwined with defendant's sexual-abuse acts, or how, if at all, defendant's consistent goal of sexually abusing R may affect the sufficiency of the pause.

Lastly, we do not agree with the state that defendant licking defendant's buttocks was qualitatively different conduct from his other acts of sexual abuse, creating

a "sufficient pause." The state's argument that defendant's second act of sexual abuse was done for the somehow distinct purpose of restoring his erection is inconsistent with the facts as found by the jury, as reflected in the jury instruction and its verdict, that *all* of defendant's sexual-abuse acts were committed "for the purpose of arousing or gratifying [defendant's] sexual desire." That undermines any conclusion that his second act of sexual abuse was qualitatively different. *Cf. Moore*, 319 Or App at 147-48 (concluding that the defendant's conviction for one count of first-degree rape based on forcible compulsion and one count based on the victim's physical helplessness did not constitute qualitatively different conduct creating a "sufficient pause," where each charge was based on different statutory theories of rape, and both involved "the ongoing rape of a victim who was in and out of consciousness during the same attack in the same location").

To the extent that the state argues that the loss of defendant's erection is a significant intervening event creating a pause sufficient to have afforded him the opportunity to renounce his criminal intent, we do not agree. The loss of defendant's erection occurred at the end of intervening sexual conduct which we have already determined was not evidence creating a "sufficient pause" between his preceding and following acts of sexual abuse. We are not persuaded that the loss of defendant's erection accompanying that intervening conduct, in the midst of an ongoing sexual assault, is sufficient evidence of a significant event that, on its own, created a pause "so marked in scope or quality," *Huffman*, 234 Or App at 184, that it afforded him the opportunity to renounce his criminal intent to commit his acts of sexual abuse.

With regard to the break between defendant's acts of touching R's breast and touching her buttocks, we reach a similar conclusion. R testified that, after defendant bent down to lick her buttocks, "he was still trying to *** regain the erection and *** he grabbed my breasts *** and at the same time I was trying to like keep his hands off my mouth, so that I could breathe, and screaming and—while he was telling me, 'Be quiet. Just shh, shh, shh.'" That testimony fails to establish that defendant had stopped licking her

buttocks at the time he grabbed her breast and, because those acts could have been occurring simultaneously as the state concedes, therefore fails to establish a "sufficient pause." *See Ortiz-Rico*, 303 Or App at 85 ("[M]erger is appropriate where there is no evidence that would permit a reasonable factfinder to find that one crime had ended before the other began."). We reject the state's argument that defendant's act of licking R's buttocks supports the sufficiency of the pause because it was done for a different purpose than his act of touching her breasts. Even if we agreed with that argument, it would not establish a "sufficient pause" where, as here, there is no evidence of a temporal break between those acts of sexual touching. *See West-Howell*, 282 Or App at 397-98 ("one crime must end before another begins *and* each crime must be separated from the others by a sufficient pause" (emphasis in original)).

As for the break between defendant's first act of rubbing his penis against R's buttocks and his touching of her breasts, the record does not support a "sufficient pause." As we already concluded, defendant's first act of sexual abuse, causing R to touch his penis, and his second act, rubbing his penis against R's buttocks, constituted sequential acts of touching. Further, there was no evidence of any break between defendant licking R's buttocks and grabbing her breasts. Thus, for the same reasons that the evidence fails to establish a "sufficient pause" between defendant causing R to touch his penis and his act of licking her buttocks, the evidence fails to establish a "sufficient pause" between his act of rubbing his penis against R's buttocks and his act of grabbing her breasts.

Finally, we conclude that the record does not establish a "sufficient pause" between defendant causing R to touch his penis and touching her breasts, or between his touching of her breasts and touching her anus with his hand and penis.

As to the break between defendant causing R to touch his penis and his touching of her breasts, defendant engaged in the intervening conduct of rubbing his penis against her buttocks, attempting to penetrate her vagina, and bending down to lick her buttocks. However, as we have

already explained, the record failed to show a "sufficient pause" between defendant rubbing his penis against her buttocks, if that act had supported the sexual abuse charge, and his act of touching her breasts. Because defendant rubbing his penis against her buttocks occurred immediately after his act of causing R to touch his penis had ended, for the same reasons, we conclude the evidence fails to establish a "sufficient pause" between causing R to touch his penis and touching her breasts.

As to the break between defendant touching R's breasts and his final two acts of touching her anus with his hand and penis, the evidence also falls short of establishing a "sufficient pause." R testified that after defendant licked her buttocks and grabbed her breast, which caused his erection to return, he began rubbing his penis against her anus and incidentally touching her anus with his hand until he ejaculated. That testimony fails to provide evidence of the durational break between defendant touching R's breasts and his next acts of touching her anus with his hand and penis beyond sequential acts of touching, nor does it describe how long defendant engaged in the final acts of touching of her anus before he ejaculated. It does not therefore establish a "sufficient pause."

Although this event occurred over a 30-minute period, the entire event occurred while R was lying on her side with defendant behind her and, as R testified, at the time the assault ended "his hand was still over [her] mouth" and the "knife was on [her] side." We cannot conclude on this record that the state has met its burden to overcome the presumption that repeated violations of the same statutory provision in the same criminal episode merge based on the passage of 30 minutes without some evidence of the duration of the break between each act of sexual abuse, or without more detail about the intervening acts that would allow for a nonspeculative inference that those acts created a pause so marked in scope or quality that it afforded defendant an opportunity to renounce his criminal intent between committing the acts of sexual abuse. *Compare Lasheski*, 309 Or App at 143-44, 148-49 (evidence underlying the defendant's convictions for three counts of sexual abuse based on

his touching of the victim over "an hour or two" failed to support a "sufficient pause" between each act where no evidence as to the timing of each act of touching in relation to the other, no evidence as to "how much time elapsed from when the victim rolled over, trying to escape the touching of her vaginal area, and when defendant started rubbing her buttocks," and no evidence of a significant intervening event), *with Zachery*, 304 Or App at 480 (evidence showed that defendant had an opportunity to renounce his criminal intent supporting a "sufficient pause" between defendant's two groups of unlawful contacts of the victim, based on the passage of 30 minutes between those contacts where the "defendant was not in the same physical space as [the victim] and [allowed for the inference that he] would have been able to do any number of things in that period of time, such as watching a half-hour television show, the typical length of a late local news broadcast and many other programs"; and based on the second group of contacts being directed at a different subject from the first group of contacts).

In sum, the record does not establish a "sufficient pause" within the meaning of ORS 161.067(3) between defendant's acts of sexual abuse. Because of that conclusion, as the state concedes, we need not allow the court to reconsider its merger ruling on remand and therefore reverse and remand the convictions on Counts 3, 4, and 5 for entry of a single conviction for first-degree sexual abuse.

Convictions on Counts 3, 4, and 5 reversed and remanded for entry of judgment of conviction for one count of first-degree sexual abuse; remanded for resentencing; otherwise affirmed.