Argued and submitted May 6, affirmed November 5, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BENSON L. HOGEVOLL,
*Defendant-Appellant.*

Lincoln County Circuit Court
055715; A134536

196 P3d 1008

Jesse Wm. Barton argued the cause and filed the brief for appellant.

Robert Wilsey, Certified Law Student, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Denise G. Fjordbeck, Senior Assistant Attorney General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

Sercombe, J., dissenting.

528

## EDMONDS, P. J.

Defendant appeals from a judgment of conviction for exceeding the bag limit on coast bull elk, ORS 498.002,[1] a Class A misdemeanor, ORS 496.992(1).[2] The conviction arises from a 2005 second season coast bull elk hunt where defendant shot and killed one elk, found a second elk that was shot and killed by someone else, and took possession of both elk. The issue on appeal is whether, as a matter of law, a person who has killed and tagged a second season coast bull elk commits the crime of exceeding the bag limit on coast bull elk by taking possession of an additional second season coast bull elk that was killed by someone else. We affirm.

Defendant testified as follows. Just before daylight, defendant entered a field on his property to hunt a specific bull elk that had five-point antlers, which he had been observing for the previous three years. That elk and seven other bull elk were feeding in the field. Defendant shot the elk twice before it "collapsed and went down." Defendant waited approximately 15 minutes before he approached the elk, put his second season coast bull elk tag on it, and gutted it.[3] As defendant was walking back across the field to obtain his four-wheeled utility vehicle in order to haul the elk out of

---

[1] ORS 498.002(1) provides:

"Wildlife is the property of the state. *No person shall* angle for, *take*, hunt, trap or possess, or assist another in angling for, taking, hunting, trapping or possessing *any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto.*"

(Emphasis added.)

[2] ORS 496.992(1) provides:

"Except as otherwise provided by ORS 153.022 and other law, *violation of any provision of the wildlife laws, or any rule promulgated pursuant thereto, is a Class A misdemeanor* when the offense is committed with a culpable mental state as defined in ORS 161.085. If the defendant is sentenced to pay a fine, failure to pay the fine, or any portion thereof, shall be treated as provided in ORS 161.685."

(Emphasis added.)

[3] *Oregon Big Game Regulations* 13 (2005) provides that

"[t]he owner of a game mammal tag that kills a game mammal for which a tag is issued[ ] shall immediately remove in its entirety only the month and day of kill and attach the tag in plain sight securely to the game mammal. The tag shall be kept attached to such carcass or remain with any parts thereof so long as the same are preserved."

the field, he saw a seven-point bull elk lying dead in a ditch. Although defendant did not have another second season coast bull elk tag, he gutted the second elk, hauled it back to his residence, and gave the carcass to an acquaintance. Defendant later testified that he did not call the authorities about the second elk because he wanted the meat to go to "somebody that might enjoy it and utilize it." A few weeks later, the Oregon State Police began an investigation that led to the charge against defendant for exceeding the bag limit on coast bull elk.

At trial, defendant requested that the trial court instruct the jury that, to exceed the bag limit on coast bull elk, a person must knowingly *kill* more than one elk in a single season:

> "Oregon law provides that a person commits the crime of exceeding the bag limit of coast bull elk if that person knowingly kills more than one coast bull elk in one season[.]

> "In this case, to establish the crime of exceeding the bag limit of coast bull elk, the state must prove beyond a reasonable doubt the following three elements:

> "a.   The act occurred in Lincoln County Oregon.

> "b.   The act occurred on or about November 22, 2005.

> "c.   [Defendant] knowingly killed more than one coastal bull elk in the second season for coastal bull elk."

In a colloquy with the trial court, defense counsel asserted that a person exceeds the bag limit on coast bull elk only "by killing more than one animal":

> "These regulations are * * * clearly defined in terms of living animals, exceeding your quota by killing more than one animal. That is what a bag limit is. Any hunter knows that. They will not say for an animal they found dead on the road or dead in their field that they bagged an animal. They will say they found an animal."

The trial court declined to give the requested instruction, "because it used the word 'killed' as the operative verb." Instead, the trial court instructed the jury that a person exceeds the bag limit on coast bull elk by *taking* more than one elk:

" 'Take' means to kill or obtain possession or control of any wildlife.

"* * * * *

"The second charge against [defendant] is Exceeding the Bag Limit on Coast Bull Elk.

"Oregon law provides that a person commits the crime of Exceeding the Bag Limit of Coast Bull Elk if that person knowingly *takes* more than one coast bull elk in one season.

"In this case, to establish this charge beyond a reasonable doubt, the State must prove * * * that the Defendant knowingly took more than one Coast elk * * * in one season * * *.

"And again, the word 'took' * * * has the same * * * definition as the word 'take' that I've already * * * read to you."

(Emphasis added.)

Defendant's counsel then took exception to the foregoing instruction:

"I except on behalf of [defendant] * * * to the Court giving Special Instruction Number 1, Exceeding the Bag Limit on Coast Bull Elk as the State has presented it. In specifics, using the word 'take' and 'took' as it is put in that instruction on two occasions.

"And I've already articulated my reasons for * * * this objection to the Court when we were arguing about instructions. And I want to incorporate those comments on my position on how the use of the word 'took' and 'take' redefines what it means to exceed the bag limit and is contrary to what the requirements are in Oregon law as to what that term means as taken by the *regulations as a whole*."

On appeal, defendant asserts two assignments of error. First, defendant assigns error to the trial court's refusal to give defendant's requested jury instruction. Second, defendant assigns error to the trial court's jury instruction that, to prove the crime of exceeding the bag limit on coast bull elk, the state must prove "that the Defendant knowingly took more than one Coast elk." Both assignments of error frame a single issue—whether, as a matter of law, a person who has killed and tagged one second season coast bull elk commits the crime of exceeding the bag limit on coast

bull elk by taking possession of an additional second season coast bull elk that was killed by someone else. *See State v. Branch*, 208 Or App 286, 288, 144 P3d 1010 (2006) ("We review the trial court's refusal to give a requested jury instruction for error of law."); *State v. Woodman*, 341 Or 105, 118, 138 P3d 1 (2006) ("In determining whether it was error to give a particular instruction, we read the instructions as a whole to determine whether they state the law accurately.").

The elements of the crime of exceeding the bag limit on coast bull elk are established by an interplay of statutes, administrative rules, and a document titled *Oregon Big Game Regulations* that is incorporated into those administrative rules. As stated above, ORS 498.002(1) prohibits a person from taking any wildlife in violation of the wildlife laws or administrative rules:

> "Wildlife is the property of the state. No person shall angle for, take, hunt, trap or possess, or assist another in angling for, taking, hunting, trapping or possessing any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto."

ORS 496.004(16) defines "take" to mean "to kill or obtain possession or control of any wildlife." Also, the Oregon legislature in ORS 496.138(2) delegated to the Oregon Fish and Wildlife Commission (the commission) the authority to promulgate wildlife regulations.[4] Pursuant to the authority granted in ORS 496.138, the commission adopted *former* OAR 635-065-0001 (Jan 1, 2005), which incorporates *Oregon Big Game Regulations* into the Oregon Administrative Rules.[5] The 2005 version of *Oregon Big Game*

---

[4] ORS 496.138(2) provides:

"In accordance with the applicable provisions of ORS chapter 183, the commission shall adopt such rules and standards as it considers necessary and proper to implement the policy and objectives of ORS 496.012 and perform the functions vested by law in the commission."

[5] *Former* OAR 635-065-0001 (Jan 1, 2005) provides:

"(1) The purpose of these rules is to establish license and tag requirements, limits, areas, methods and other restrictions for hunting game mammals pursuant to ORS Chapter 496.

"(2) OAR chapter 635, division 065 incorporates, by reference, the requirements for hunting game mammals set out in the document entitled '2005 Oregon Big Game Regulations,' into Oregon Administrative Rules. Therefore, persons must consult the '2005 Oregon Big Game Regulations' in

*Regulations*, in turn, provides that the "Bag Limit" for the "GENERAL COAST 2nd SEASON" is "[o]ne bull elk with visible antler[.]" *Oregon Big Game Regulations* 75 (2005).[6]

On appeal, defendant contends that, "to exceed the 'bag limit' on coast bull elk, a hunter must knowingly shoot and kill a number of elk that exceeds the number of coast bull elk tags that he may possess during a single season, *i.e.*, one." The state responds that "[d]efendant's construction is not an accurate statement of the law because 'bag,' though not defined in the administrative rules or *Big Game Regulations*, is not ambiguous on its face and is used consistently throughout the administrative rules to denote the number of animals a person may *take*." (Emphasis in original.) The parties' contentions frame a question of statutory and administrative rule interpretation.

In construing an administrative rule, we apply the same analytical framework that applies to the construction of statutes. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 612 n 4, 859 P2d 1143 (1993); *Stanley v. DMV*, 193 Or App 202, 205, 89 P3d 1186 (2004). At the first level of analysis, we examine the text and context of the statute or the rule to discern the legislature's intent or the intent of agency to whom regulation has been delegated by the legislature. *PGE*, 317 Or at 611-12. Terms of common usage within the text of a statute or a rule are to be given their plain, natural, and ordinary meaning unless specifically defined by statute or rule. *State v. Murray*, 340 Or 599, 604, 136 P3d 10 (2006) ("Absent a special definition, we ordinarily would resort to dictionary definitions, assuming that the legislature meant to use a word of common usage in its ordinary sense.").

In support of his contention that the crime of exceeding the bag limit requires that a person kill more than one elk, defendant cites a number of administrative rules that

---

addition to OAR Chapter 635, to determine all applicable requirements for game mammals."

[6] Neither the statutes, administrative rules, nor the *Oregon Big Game Regulations* define the term "bag" as it is used in the context of "bag limit." Although OAR 635-045-0002(13) provides " '[b]ull elk' for the purposes of a bag limit definition[ ] means a male elk with at least one visible antler[,]" that subsection does not define the word "bag."

show that, to legally take a 2005 second season coast bull elk, a person must hunt it with a centerfire rifle while possessing a 2005 "Coast Elk 2nd Season" tag.[7] Accordingly, defendant posits, "Because a hunter's 'bag limit' corresponds to the number of 'tags' he may validly possess, a hunter exceeds the bag limit [only] by killing a greater number of game than he has valid tags." The dissent agrees. It interprets the "bag limit" hunting regulation "as a regulation of hunting live animals, and not as a limit on possession of a found dead animal." 223 Or App at 542 (Sercombe, J., dissenting).

We are unpersuaded by defendant's reasoning because it ignores the import of the legislature's definition of the word "take" for purposes of big game hunting regulations. To "take" a game animal means "to kill or obtain possession or control of any wildlife." ORS 496.004(16). The administrative regulations governing this case track that definition. *Former* OAR 635-045-0002(57) (Jan 1, 2004) defines the word "possession" for purposes of the statute as exercising "physical possession or to otherwise exercise dominion or control over any wildlife or parts thereof, and any person who counsels, aids or assists another person holding such wildlife is deemed equally in possession." In other words, the legislature intended that a person "takes" a game animal under ORS 498.002(1) by either killing the animal, or by obtaining possession of it or parts of it, or by controlling the whole or parts of it through means other than by killing it.

The remainder of the regulations applicable to this case are not inconsistent with the legislature's definition of

---

[7] For example, defendant cites OAR 635-065-0015(1), which provides that "[a]ny person *hunting* game mammals for which a tag is required must have on their person a valid tag for the dates, area and species being *hunted*." (Emphasis added.) Defendant then points to the following "General Hunting Regulations" from the *Oregon Big Game Regulations*:

"**No Person Shall** * * * *Hunt* with a centerfire or muzzleloading rifle without a valid, unused deer or elk tag for that time period and area on their person during * * * coast bull elk seasons[.]

"* * * * *

"The owner of a game mammal tag that *kills a game mammal* for which a tag is issued shall immediately remove in its entirety only the month and day of *kill* and attach the tag in plain sight securely to the game mammal."

*Oregon Big Game Regulations* 13 (2005) (boldface in original; emphasis added).

the word "take." The applicable administrative regulations do not define what is meant by the words "bag limit." However, it is apparent from the context in which the words are used that "bag limit" refers to the number of animals that may be "taken" pursuant to the definition in ORS 496.004(16), *i.e.*, a number that corresponds to the number of tags purchased by the hunter. Thus, a "tag" is defined by the regulations as "a document authorizing the taking of a designated kind of mammal at a specified time and place." *Former* OAR 635-045-0002(74) (Jan 1, 2004). It follows that the fact that, pursuant to administrative rule, a person must use a centerfire rifle to hunt and lawfully kill a bull elk does not prevent that person from violating ORS 498.002(1) by other means, such as exercising dominion or control over the animal or its parts.[8]

In sum, the breadth of the legislature's definition of the word "take" defeats defendant's interpretation that "bag limits" are restricted to animals that a hunter actually kills. We therefore conclude that the trial court did not err in refusing to give defendant's requested jury instruction that, to prove the crime of exceeding the bag limit on coast bull elk, the state must prove that defendant killed more than one elk, or in giving the instruction that it gave.

Affirmed.

**SERCOMBE, J.,** dissenting.

The issue in this case is whether defendant was charged with a violation that could have been committed only by killing a second elk, so as to justify his submitted jury instruction to that effect and preclude the instruction that was given. Defendant was charged with a violation of *former*

---

[8] The dissent relies on the existence of a separate rule in the 2005 *Oregon Big Game Regulations* that provides that "[n]o person shall possess or transport any game mammal or part thereof, which has been illegally killed, found or killed for humane reasons * * * unless they have notified and received permission from personnel of the Oregon State Police or [Oregon Department of Fish and Wildlife] prior to transporting." 223 Or App at 541 (Sercombe, J., dissenting). But it does not follow from the existence of potentially overlapping administrative rules that the agency intended to regulate only the hunting of live animals for purposes of a "bag limit," particularly in light of the agency's definition of the word "possession" in *former* OAR 635-045-0002(57) (Jan 1, 2004).

OAR 635-065-0001(2) (Jan 1, 2005),[1] a rule of the Oregon Department of Fish and Wildlife (ODFW) that incorporated by reference the "requirements for hunting game mammals set out in the document entitled '2005 Oregon Big Game Regulations.'" Those requirements, in turn, stated a "bag limit" of "[o]ne bull elk with visible antler" in the restrictions applicable to the "Elk Centerfire Firearm Seasons" for the "General Coast, 2nd Season." The wildlife citation and complaint charged defendant with the rule violation for "exceeding the bag limit on Coast Bull elk."

The majority concludes that a person may exceed that "bag limit" hunting regulation by possessing a dead animal that was killed by someone else. 223 Or App at 533. Because it determines that a person does not have to kill an animal to exceed the bag limit, or even be engaged in hunting in any way, the majority rejects defendant's submitted jury instruction and sustains the instruction given to the jury. It reasons that OAR 635-065-0001(2) carries out ORS 498.002(1), which provides:

"Wildlife is the property of the state. No person shall angle for, take, hunt, trap or possess, or assist another in angling for, taking, hunting, trapping or possessing any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto."

"Take" is further defined to mean "to kill or obtain possession or control of any wildlife." ORS 496.004(16). Given the breadth of ORS 498.002(1), the majority reads the "bag limit" regulation expansively to regulate the number of elk that can be "taken," either by killing, possessing or controlling the

---

[1] *Former* OAR 635-065-0001 (Jan 1, 2005) provided:

"(1) The purpose of these rules is to establish license and tag requirements, limits, areas, methods and other restrictions for hunting game mammals pursuant to ORS Chapter 496.

"(2) OAR chapter 635, division 065 incorporates, by reference, the requirements for hunting game mammals set out in the document entitled '2005 Oregon Big Game Regulations,' into Oregon Administrative Rules. Therefore, persons must consult the '2005 Oregon Big Game Regulations' in addition to OAR chapter 635, to determine all applicable requirements for game mammals."

All references to OAR 635-065-0001 refer to the 2005 rule in effect at the time of defendant's conduct.

animal, in any one season. Accordingly, it concludes that defendant could exceed the "bag limit" regulation for Coast Bull elk by killing a single elk and possessing the dead carcass of another elk. Thus, the majority sustains the jury instruction given by the trial court.

With respect, the majority's conclusion rests on an immaterial predicate. The interpretation of the "bag limit" hunting regulation rests on its own text and context. ORS 498.002(1) has little to do with the content and meaning of the "bag limit" hunting regulation. That statute broadly defines *all* violations of wildlife laws and rules, not the *particular* meaning of an individual regulation. Properly viewed in its context, the "bag limit" regulation restricts the number of elk that can be killed during a regulated centerfire firearm hunt. Other, more particular parts of the *2005 Oregon Big Game Regulations* (*Regulations*) limit possession of dead or live elk and other game mammals, as well as setting out "bag limits" for each described hunt. Reading the bag limit regulation to restrict *all manner of wildlife takings*, as the majority does, makes that regulation inconsistent with several other regulations affecting the possession of dead game mammals or the control of live game mammals. Because nothing in the text or context of the regulation supports the construction of the bag limit regulation as the super-regulation for all wildlife takings, because that construction makes the regulation inconsistent with several other regulations, and because the plain and ordinary meaning of "bag limit" is a restriction on the number of animals that may be killed and kept during a particular hunt, I respectfully dissent.

The narrow question presented in this appeal is whether the trial court erred in failing to give defendant's requested jury instruction that "to establish the crime of exceeding the bag limit on coast bull elk, the state must prove," among other things, that defendant "knowingly killed more than one coastal bull elk in the second season for coastal bull elk." Instead, the court instructed the jury that it should convict defendant if it found that he "knowingly took more than one Coast elk during one season," separately instructing that "take" means "to kill or obtain possession or control of any wildlife."

We review a trial court's refusal to give a requested jury instruction for error as a matter of law. *State v. Moore*, 324 Or 396, 927 P2d 1073 (1996). A party is entitled to have the jury instructed on the law that supports his or her theory of the case where there is evidence to support that theory and the instruction correctly states the law. *State v. Lowe*, 130 Or App 370, 373, 881 P2d 837 (1994).

Defendant argued before the trial court that a "bag limit" regulates the number of live animals that are killed during a hunt. The trial court disagreed:

"[DEFENSE COUNSEL]: They charged him with Exceeding the Bag Limit.

"[THE COURT]: I understand that.

"[DEFENSE COUNSEL]: They didn't charge him with Taking.

"[THE COURT]: I understand. And Exceeding the Bag Limit, effectively, accuses him of possessing two elk, not one.

"[DEFENSE COUNSEL]: No sir. Uh, that is not in, that is not in the Administrative Rules that bag limit is equal to taking. * * * These regulations are * * * clearly defined in terms of living animals, exceeding your quota by killing more than one animal. That's what a bag limit is. Any hunter knows that. They will not say, uh, for an animal they found dead on the road or dead in their field that they bagged an animal. They will say they found an animal.

"* * * * *

"[THE COURT]: What I'm saying is, ultimately, is that this is a possession charge, not a killing charge. Exceeding the Bag Limit means you possess—there's a quota. One elk. If you possess two, you're over the quota. You've exceeded the bag limit. How you came into possession of the two elk doesn't matter. You can't do it. That's what this charge is."

As noted above, defendant was charged with a violation of OAR 635-065-0001(2), making it illegal to fail to comply with "the requirements for hunting game mammals" set out in the *Regulations*. The particular hunting requirement at issue, a "bag limit" of "one bull elk with visible antler" was contained in the restrictions in the *Regulations*

applicable to the "Elk Centerfire Firearm Seasons" for the "General Coast, 2nd Season." In construing the meaning of this limitation, we interpret administrative rules much like statutes, using the familiar maxims stated in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). *See Marshall's Towing v. Department of State Police*, 339 Or 54, 62, 116 P3d 873 (2005). That is to say, we look to the text and context of the provision, using rules of construction that bear directly on textual interpretation, to determine its meaning. In this case, the context of the "bag limit" regulation would include other restrictions in the *Regulations* and other rules and statutes regulating wildlife takings.

I begin with the text of the regulation, bearing in mind that "[w]ords of common usage typically should be given their plain, natural, and ordinary meaning," *PGE*, 317 Or at 611. The ordinary meaning of "bag limit" is a quota on the number of live animals taken during a hunting or fishing period. *Webster's Third New Int'l Dictionary* 162 (unabridged ed 2002), defines "bag limit" as "the maximum number of fish or game animals permitted by law to be taken by one person in a given period." *Webster's* also defines the word "bag," which is instructive of how it is used in the term "bag limit." As a noun, "bag" is defined, in part, as:

> "**4** : something that is bagged: as * * * **b** : a quantity of game taken during a particular hunt or during a particular period usu. by one person ‹the ~ included an elephant, and a magnificent male tiger›; *often* : the amount of game permitted (as by law) to be taken by one hunter ‹he got his ~ early and was home before lunch› **c** : something likened to the bag taken by a hunter or fisherman esp. in being won, captured, seized or otherwise taken by personal effort[.]"

*Id.* As a verb it means, "**3 a** : to take (animals) as game : to kill or capture (game) ‹he *bagged* a fine 10-point buck›[.]" *Id.* Those definitions confirm that, as the word "bag" is used in the context of the term "bag limit," it is meant to include those animals that the hunter has "bagged" that is, the live animals that have been successfully killed and captured by the hunter.

Other dictionaries confirm this understanding. For example, *The Oxford English Dictionary* 880 (second ed

1989) provides the following specific use of the word bag: "**9**. *Sporting*. = Game-bag; *hence*, the contents of a game-bag, the quantity of fish or game however large (embracing *e.g.* elephants and buffaloes) killed at one time; the produce of a hunting, fishing, or shooting expedition." *The Random House Dictionary of the English Language* 155 (unabridged second 1987) defines bag as "the amount of game taken, esp. by one hunter in one hunting trip or over a specified period" and to bag as "to kill or catch, as in hunting: *I bagged my first deer when I was a teenager*." Similarly, E. Cobham Brewer and Ivor H. Evans, *Brewer's Dictionary of Phrase and Fable* 68 (Centenary ed 1970), provides the following definition of "to bag," "[t]o secure for oneself, to purloin; probably from sporting or poaching use, to put into one's bag what one has shot or trapped."

Those sources of meaning imply that a "bag limit" establishes a quota on the number of live "animals * * * taken" during a hunting or fishing period. Although the meaning of "taken" may be elastic, the ordinary understanding of "bag limit" is that it applies to live animals (as opposed to actions related to possession or trafficking in animal meat or parts). Moreover, a "bag limit" pertains to actions during a hunting or fishing trip or season.

Those same understandings of the meaning of "bag limit" arise from the context of the regulations here. Within the *Regulations*, "bag limits" are set only in reference to particular hunts, hunts defined by time, location, and animal species. The *Regulations* set out a number of "general hunting regulations" that apply to all hunts, limitations on "legal hunting methods" in a table and text, and then several provisions on purchasing licenses, applications and tags, emergency hunts, landowner preference hunting, and special rules for youth and disabled hunters.

The bulk of the regulations, however, list hunting restrictions in table and rule formats for different species of game mammals. Those restrictions are first categorized by animal species, type of hunt, and hunting weapon, *e.g.*, "Pronghorn Antelope - Controlled,"[2] "Cougar - General," and

---

[2] A "controlled hunt" is a hunt where the number of hunters is limited and tags are awarded through a public drawing.

"Buck Deer Centerfire Firearm Seasons," and "General Elk Bow Seasons."[3] Beneath each category of hunt, the *Regulations* state written limitations on the general hunt, such as tag sale deadlines, and then set out a table listing hunt numbers (referencing a described area of land), the hunt names (the name of the hunting area), a "bag limit" for each hunt, the "open season" (the time of each hunt), and for controlled hunts, the number of issued and applied for tags from the previous season. Sometimes, the table describes a general season for an animal species by listing the hunt season, the open season, the required tag, the "bag limit," and the "open area" (place that the restrictions apply). The "bag limits" throughout the *Regulations* describe the number and type of animal that can be hunted, *e.g.*, "one doe or fawn pronghorn," and "one buck with visible antler."

The regulations applicable to defendant's conduct were those for the "Elk Centerfire Firearm Seasons." The season of the hunt was "General Coast 2nd Season;" the "open season" was November 19-25; the tag required was "Coast Elk 2nd Season;" the "bag limit" was "[o]ne bull elk with visible antler;" and the "open area" was "Alsea, Applegate, Melrose, Scappoose, Siuslaw, Scott Mt. and Willamette units."

The text and context of the "bag limit" regulation as applied to defendant suggest that the restriction pertains to hunting activities within the restricted area. OAR 635-065-0001(2) incorporates only the "requirements for hunting game mammals" that are stated in the *Regulations*. The *Regulations* in general set out each "bag limit" in the context of a particular hunt or hunting season. Given that the *Regulations* always describe "bag limit" in connection with hunting, it is reasonable to conclude that violating the "bag limit" would occur by hunting too many animals.

A second relevant rule of construction obligates a court to construe rules to be consistent with one another, ORS 174.010 ("where there are several provisions or particulars such construction is, if possible, to be adopted as will

---

[3] A "center-fire" firearm, as distinguished from a "rimfire" firearm, uses cartridges that are "fired by the striking of a hammer or firing pin upon a cap or primer at the center of the base" of the cartridge. *Webster's* at 362.

give effect to all"). The majority's construction of "bag limit" regulations as the equivalent of ORS 498.002(1) and a limitation on all "takings" of the particular species of animal, whether by killing, controlling, or possessing the animal, makes the bag limitation inconsistent with more particular regulations on possession of live or dead animals and redundant of other regulations. To begin with, the *Regulations* already contained a general proscription on illegal takings. One of the "General Hunting Regulations" provides:

"No Person Shall:

"Take or attempt to take any game mammals or any protected wildlife species of any size or sex or amount, by any method or weapon, during a time or in any area not prescribed in these rules."

(Boldface omitted.)

If the "bag limit" hunting regulation limits all "takings" of whatever character, then that specific regulation of "takings" is redundant. More importantly, the possession of dead animals is specifically regulated. The "General Hunting Regulations" limit the possession of the meat or carcass of certain animals in the field without evidence of the animal's sex. Another of the "General Hunting Regulations" provides:

"No person shall possess or transport any game mammal or part thereof, which has been illegally killed, found or killed for humane reasons, except shed antlers, unless they have notified and received permission from personnel of the Oregon State Police or [Oregon Department of Fish and Wildlife] prior to transporting."

Assuming that defendant found the second elk, that regulation is the one violated by defendant. But defendant was charged with violating *a different* regulation, the "bag limit" on coastal bull elk during the second elk centerfire firearm season. According to the majority, if defendant had notified the State Police and received permission to keep and dress the animal, he would still have violated the "bag limit" hunting regulation because he would have "taken" a second animal by possession. 223 Or App at 534. Reading the "bag limit" hunting regulation as a regulation of hunting live animals, and not as a limit on possession of a found dead animal,

eliminates any inconsistency between the regulations and should be the construction of the "bag limit" hunting regulation that is preferred.

Similarly, two or more live elk may be "taken," in the sense of possessed, by license from ODFW. OAR 635-049-0015(1) provides that cervids may be held "as authorized by a cervid license issued by the Department."[4] OAR 635-049-0135 provides the general requirements for holding cervids; OAR 635-049-0175 describes the license issuance procedure. Had a person possessed two or more live elk as authorized by license, according to the majority, that person still would have "taken" a second animal by possession in violation of any applicable "bag limit" regulation. Construing the "bag limit" hunting regulation as limited to hunting violations removes that inconsistency between the regulations.

For those reasons, I read the "bag limit" hunting regulation to apply to defendant's treatment of live animals during the regulated hunt. Because there was some question about whether defendant had killed the second elk, or merely encountered it in the field, defendant was entitled to a jury instruction defining the question to be whether defendant killed one or two elk. The trial court erred, in my view, in defining a violation of exceeding the "bag limit" hunting regulation differently and instructing the jury that a bag limit violation could occur merely by possessing more than one dead animal.

---

[4] Under OAR 635-049-0005(1), " '[c]ervids' are animals of the family Cervidae (deer, elk, moose, reindeer, and caribou)." The cervid license regulations were adopted in 2008. The use of "bag limit" in the *2008 Oregon Big Game Regulations* is similar to its use in the 2005 *Regulations*.