No. 913 October 22, 2025 327

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KRISTIAN C. MANKILLER,
*Defendant-Appellant.*

Wallowa County Circuit Court
21CR02764; A181574

Wes Williams, Judge.

Argued and submitted April 11, 2025, Corvallis High School, Corvallis.

Erik M. Blumenthal, Deputy Public Defender, argued the cause for appellant. On the brief were Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Andrew D. Robinson, Deputy Public Defender, Oregon Public Defense Commission.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Reversed and remanded for merger of the guilty verdicts on Counts 1 and 2; remanded for resentencing; otherwise affirmed.

**AOYAGI, P. J.**

Defendant killed two elk while hunting with his father in the Wenaha Wildlife Refuge while it was closed to the public. He did not have a license, tag, or permit to hunt the elk, nor did he have tribal treaty rights to do so. The state charged defendant with unlawfully taking a bull elk (Count 1), unlawfully taking a cow elk (Count 2), and unlawfully entering onto state wildlife lands (Count 3), all charged as misdemeanors. He was found guilty on all counts. On appeal of the judgment of conviction, defendant raises five assignments of error, which reduce to two issues. First, defendant argues that the trial court erred in not requiring the state to prove as an element of all three offenses that defendant knew that he was violating the wildlife laws. Second, in the alternative, defendant argues that, if the verdicts stand, the trial court plainly erred by not merging some or all of them. As explained below, we disagree on the first point, but we agree that the verdicts on Counts 1 and 2 should have been merged. Accordingly, we reverse and remand for entry of a single taking conviction, affirm the conviction on Count 3, and remand for resentencing.

## FACTS

Defendant waived jury and the matter was tried to the court. He stipulated to the following facts. On or about January 2, 2021, defendant knowingly killed a bull elk and a cow elk on lands in the Wenaha Wildlife Refuge. That land is deeded property owned by the Oregon Department of Fish and Wildlife (ODFW). It is not open or unclaimed land. The refuge was closed to all public access on the date of the incident, as part of a state wildlife management regulation. Defendant crossed over the cable gate to get onto ODFW property. There were signs at the refuge stating, "Winter Closure, No Public Access, Jan 1-March 31, Oregon Department of Fish and Wildlife." Defendant saw the closure signs. At the time of the incident, defendant did not have a valid license, tag, or permit issued by ODFW for hunting elk, and no valid elk seasons were in effect. Defendant also was not hunting pursuant to any lawful treaty hunting right or season.

The state did not put on any evidence beyond the stipulated facts. Defendant's father, Kermit Mankiller, testified for the defense. The gist of his testimony was as follows. Defendant shot two elk on his father's behalf on January 2, 2021, and neither of them knew at the time that they were violating the wildlife laws. Kermit Mankiller is a member of the Nez Perce tribe, and defendant is a member of the Cayuse tribe. Kermit Mankiller is someone knowledgeable about the law, and he believed when they took the elk that his treaty rights as a Nez Perce tribal member allowed him to hunt in that area on that date regardless of any closure signs. Defendant helped him with the hunt because Kermit Mankiller has a shoulder injury that prevents him from firing a rifle himself, and, as a cultural matter, defendant was required to help his father take the elk. Kermit Mankiller thought that family members were legally permitted to exercise his hunting rights on his behalf as long as they were members of one of the Columbia River Treaty tribes, as defendant is. Therefore, neither defendant nor his father realized that it was unlawful for them to enter the closed wildlife refuge and take elk.

The parties disagreed at trial regarding the applicable culpable mental state requirements for the offenses. Defendant took the position that the state needed to prove as an element of the offenses that he knew that his conduct violated the wildlife laws. Although its position shifted over time, the state ultimately took the position that it needed to prove that defendant knew that he was taking elk and knew that he was entering ODFW lands, but that it did not need to prove any culpable mental state as to the fact that such conduct violated the wildlife laws.[1] The trial court agreed with the state on that point and, proceeding with that understanding, found defendant guilty of all three offenses. Defendant appeals the resulting judgment of conviction. His first three assignments of error pertain to the culpable

---

[1] The state's ultimate position was consistent with the language of the charging instrument, which alleged that defendant "did unlawfully and knowingly take a bull elk, in violation of the Oregon wildlife laws and/or regulations," "did unlawfully and knowingly take a cow elk, in violation of the Oregon wildlife laws and/or regulations," and "did unlawfully and knowingly enter onto ODFW Wildlife Lands * * *, in violation of the Oregon wildlife laws and/or regulations."

mental state requirement for each count, and his fourth and fifth assignments of error relate to merger.

## CULPABLE MENTAL STATE

Defendant contends that the trial court misconstrued the culpable mental state requirements for the charged offenses. He argues that, properly construed, the statutory scheme required the state to prove not only that defendant knew that he was taking elk and knew that he entered onto ODFW lands, but also that defendant knew that he was violating the wildlife laws by doing so. The state disagrees. It maintains that the trial court correctly concluded that the state did not need to prove that defendant knew he was violating the wildlife laws. The state also makes an alternative argument that we do not reach and therefore do not discuss.

The question presented is one of statutory construction and therefore a question of law that we review for legal error. *State v. Owen*, 369 Or 288, 295, 505 P3d 953 (2022) (recognizing that it is ultimately a question of statutory construction what culpable mental state requirements attach to a particular offense); *State v. Colby*, 295 Or App 246, 252 n 4, 433 P3d 447 (2018) ("We have often held that our review of a ruling in a bench trial about the proof required for the elements of the charged offense is analogous to our review of a ruling about the elements to be proven in a jury instruction.").

The parties' disagreement does not turn on the wording of a single statute but, instead, on the relationship between various statutes and regulations that together govern wildlife violations. *Cf. State v. Hogevoll*, 223 Or App 526, 531, 196 P3d 1008 (2008), *aff'd*, 348 Or 104, 228 P3d 569 (2010) ("The elements of the crime of exceeding the bag limit on coast bull elk are established by an interplay of statutes, administrative rules, and a document titled *Oregon Big Game Regulations* that is incorporated into those administrative rules."). ORS chapters 496, 497, 498 and 501 together comprise "the wildlife laws." ORS 496.002. Chapter 496 addresses the application, administration, and enforcement of wildlife laws; chapter 497 addresses licenses, tags, and permits; chapter 498 addresses hunting, angling,

and trapping regulations, as well as miscellaneous wildlife protective measures; and chapter 501 addresses wildlife refuges and closures. There are also various administrative rules pertaining to wildlife, which have been promulgated under the authority of provisions of the foregoing statutes.

We briefly summarize the particular wildlife statutes and rules relevant to this appeal, before addressing how they work together.

First, ORS 496.012 describes the state's overarching wildlife policy, which is "that wildlife shall be managed to prevent serious depletion of any indigenous species and to provide the optimum recreational and aesthetic benefits for present and future generations of the citizens of this state."

Second, ORS 496.146 gives the State Fish and Wildlife Commission the authority to promulgate rules on certain subjects.[2] As relevant here, ORS 496.146(4) authorizes the Commission to promulgate rules regarding the issuance of licenses, tags, and permits for angling, taking, hunting, and trapping, and the Commission has used that authority to promulgate rules requiring a valid tag to hunt elk. *See* OAR 635-045-0002(68) ("'Tag' is a document authorizing the taking of a designated kind of mammal at a specified time and place."); OAR 635-065-0015(1) ("Any person hunting game mammals for which a tag is required must have on their person a valid tag for the dates, area and species being hunted."); *see also* ORS 496.004(9) (defining "game mammal" to include elk). And ORS 496.146(9) authorizes the Commission to "establish and develop wildlife refuge and management areas and prescribe rules governing the use of such areas," and the Commission has used that authority to promulgate OAR 635-008-0050(1), which allows ODFW to close its lands "to all entry" and prohibits people from entering into "an area posted 'closed to entry.'"

Third, ORS 498.002 provides that wildlife is the property of the state and shall not be hunted or taken (1)

---

[2] *See also* ORS 496.138(2) (providing more generally that, "[i]n accordance with the applicable provisions of ORS chapter 183, the commission shall adopt such rules and standards as it considers necessary and proper to implement the policy and objectives of ORS 496.012 and perform the functions vested by law in the commission").

in violation of the wildlife laws, *i.e.*, ORS chapters 496, 497, 498, and 501, or any rule promulgated thereunder, or (2) while intentionally violating certain trespass statutes:

> "(1) Wildlife is the property of the state. No person shall angle for, take, hunt, trap or possess, or assist another in angling for, taking, hunting, trapping or possessing any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto.
>
> "(2) No person shall angle for, take, hunt or trap, or assist another in angling for, taking, hunting or trapping any wildlife while intentionally violating ORS 164.245 to 164.270 or 498.120."[3]

We have described ORS 498.002(1) as creating "one crime to punish persons who violate *any* wildlife law or rule when that violation of the rules involves angling for, taking, hunting, trapping, or possessing wildlife with a culpable metal state, *e.g.*, the unlawful acquisition of state property."[4] *State v. Barton*, 304 Or App 481, 496, 468 P3d 510 (2020) (emphasis in original).

Fourth, ORS 496.992 classifies wildlife offenses and identifies the permissible penalties for them. From its original enactment in 1973 until 1984, the statute provided simply that violation of any wildlife law or rule was "a misdemeanor," ORS 496.992 (1973), or "a Class A misdemeanor," ORS 496.992(1) (1975). The legislature amended the statute in 1984, however, in response to *State v. Cho*, 297 Or 195, 681 P2d 1152 (1984). *Cho* construed ORS 496.992 (1983) as allowing only criminal prosecution of wildlife offenses, decided that the normal culpable mental state requirements applied to wildlife crimes, and therefore reversed a conviction for a wildlife crime for which no culpable mental state had been proved. *Cho*, 297 Or at 198-202. *Cho* also expressly rejected the idea of entering a violation as a lesser included

---

[3] ORS 164.245 to 164.270 define various types of criminal trespass. ORS 498.120 is part of the wildlife laws and prohibits hunting on another's land without permission.

[4] We note that, generally, "state hunting and fishing regulations cannot be enforced against a member of a tribe for hunting or fishing in a manner authorized by treaty." *State v. Wagner*, 323 Or App 369, 371, 524 P3d 564 (2022), *rev dismissed*, 371 Or 309 (2023). Here, based on the stipulations and evidence, the trial court necessarily found that defendant's taking of the elk was not authorized by treaty and thus not lawful.

offense for which no mental state would be required, because it read the statute as allowing only for misdemeanors. *Id*. at 202. The legislature immediately amended ORS 496.992 to allow for noncriminal violations. Or Laws 1985, ch 372, § 1. As a result of that amendment, violating a wildlife law or rule is a Class A misdemeanor if committed with a culpable mental state and a noncriminal violation if committed without a culpable mental state. ORS 496.992. The current statute also provides for different violation classes, depending on the type of animal and other circumstances. *Id*.

Thus, for example, unlawful taking of elk is either a Class A misdemeanor or Class A violation, depending on whether it is committed with a culpable mental state:

"(1)   Except as otherwise provided by this section or other law, a violation of any provision of the wildlife laws, or any rule adopted pursuant to the wildlife laws, is a Class A misdemeanor if the offense is committed with a culpable mental state.

"* * * * *

"(3)   A violation of a provision of the wildlife laws, or a rule adopted pursuant to the wildlife laws, that involves the taking of wildlife, other than nongame mammals and game birds, is a Class A violation if the offense is committed without a culpable mental state."

ORS 496.992.

With those provisions of the wildlife statutes and rules in mind, we return to the specifics of this case.

Defendant was charged in Count 1 with "WILDLIFE VIOLATION: UNLAWFUL TAKE BULL ELK—(A Misdemeanor; ORS 498.002)." That count alleged that defendant "did unlawfully and knowingly take a bull elk, in violation of the Oregon wildlife laws and/or regulations; contrary to statute and against the peace and dignity of the State of Oregon." Count 2 was identical except that it pertained to a cow elk. Thus, both Counts 1 and 2 charged defendant with violating ORS 498.002, the wildlife statute that prohibits hunting or taking in violation of the wildlife laws and rules. The charging instrument did not specify the "wildlife laws and/or regulations" that defendant violated,

but, for present purposes, we assume that it refers to OAR 635-065-0015(1), which requires a valid tag to hunt game mammals.[5]

Defendant was charged in Count 3 with "UNLAWFUL ENTRY ONTO ODFW WILDLIFE LANDS— (A Misdemeanor; ORS 496.146)." That count alleged that defendant "did unlawfully and knowingly enter onto ODFW Wildlife Lands that were posted as closed to public entry, in violation of the Oregon wildlife laws and/or regulations; contrary to statute and against the peace and dignity of the State of Oregon." Thus, Count 3 charged defendant with violating ORS 496.146—the wildlife statute that, among other things, authorizes the State Fish and Wildlife Commission to promulgate rules regarding wildlife refuges—while specifically alleging that defendant knowingly entered closed ODFW lands in violation of the wildlife laws and/or rules.[6] For present purposes, we assume that the latter refers to OAR 635-008-0050(1), which prohibits entry into ODFW lands that are posted "closed to entry."

The question before us is whether the trial court erred by not requiring the state to prove that defendant knew that his conduct—taking elk for Counts 1 and 2 and entering onto ODFW lands for Count 3—violated the wildlife laws.

The answer to that question depends on how the relevant wildlife statutes and rules work together in creating wildlife crimes. We begin our analysis with ORS 496.992. ORS 496.992(1) provides, "Except as otherwise provided by this section or other law, a violation of any provision of the wildlife laws, or any rule adopted pursuant to the wildlife laws, is a Class A misdemeanor if the offense is committed with a culpable mental state." Defendant describes ORS 496.992(1) as "the statutory provision that defines the

---

[5] There appears to be some disagreement between the parties as to how, technically, the state should charge wildlife crimes, in terms of which statutes and/or rules it should cite. We do not opine on that issue here. We do observe, however, that, when the charging instrument contains a general reference such as "in violation of the wildlife laws and/or regulations," it would at least be helpful to this court if a clear record were made as to which specific wildlife laws or regulations were violated.

[6] Both parties acknowledge, at least implicitly, that it is odd to have charged defendant with violating ORS 496.146, but they agree that no one made an issue of it in the trial court and that no one is making an issue of it on appeal.

criminal offense of violating the wildlife laws." In his view, ORS 496.992(1) creates a crime with two elements: "(1) a violation of the wildlife laws and (2) a culpable mental state." The state disagrees. In its view, defendant was not charged with violating ORS 496.992(1), and it would not "have made sense for the state to charge defendant with violating ORS 496.992(1) alone." The state describes the purpose of ORS 496.992(1) as being only "to identify the penalty that applies when a person violates a wildlife rule or law." It argues that the elements that the state must prove in prosecuting a wildlife crime are found in the specific statutes and/or rules that were allegedly violated, not in ORS 496.992(1).

We agree with aspects of both parties' arguments, but we ultimately agree with the state that it was not required to prove that defendant knew that his conduct violated the wildlife laws. ORS 496.992 is mostly a penalty statute, setting out the classifications for different offenses depending on a variety of factors. At the same time, it is also the statute that allows for charging a wildlife violation as a *crime*. Absent ORS 496.992, violations of the wildlife laws would be noncriminal in nature. In that sense, defendant is correct that ORS 496.992(1) creates the criminal offense. But it does not follow that the elements of the offense are found in ORS 496.992(1). Rather, we understand ORS 496.992 to allow criminal liability for offenses created *elsewhere* in the statutes and rules. That reading is consistent with the statutory text, which does not purport to set out the elements of a crime, but instead provides only that any wildlife violation "is a Class A misdemeanor if the offense is committed with a culpable mental state." ORS 496.992(1). It is also consistent with the legislative history, which shows that the "with a culpable mental state" language was added only when it became necessary to distinguish between criminal and noncriminal offenses after the *Cho* decision. Adding that language memorialized one holding of *Cho*—that misdemeanor wildlife offenses are subject to culpable mental state requirements like all other crimes—rather than creating a new element. Nothing in the text, context, or legislative history suggests to us that the legislature intended ORS 496.992(1) itself to state the elements of a wildlife crime.

To illustrate how the wildlife statutes and rules work together, consider the tag requirement for hunting elk. OAR 635-065-0015(1) provides that "[a]ny person hunting game mammals for which a tag is required must have on their person a valid tag for the dates, area and species being hunted." Based on that rule, a person who hunts elk without a tag may be charged with violating ORS 498.002(1) by hunting wildlife in violation of OAR 635-065-0015(1). Recall that ORS 498.002(1) provides that "[n]o person shall angle for, take, hunt, trap or possess, or assist another in angling for, taking, hunting, trapping or possessing any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto." Finally, ORS 496.992 allows the state to choose whether to charge the offense as a misdemeanor or a violation. If it is charged as a misdemeanor, then the usual culpable mental state requirements for crimes apply, as held in *Cho* and now expressly acknowledged in ORS 496.992(1).

So how then are the elements of a particular wildlife offense determined? It depends on the offense. Some charges allege a violation of a single statute or rule. In *Cho*, for example, the defendant was charged with violating ORS 498.022—which generally prohibits purchasing, selling, or exchanging, or offering to purchase, sell or exchange, "any wildlife, or any part of any wildlife"—by offering to purchase bear parts. *Cho*, 297 Or at 197. The elements of that offense are found entirely in ORS 498.022. Of course, when that offense is charged as a misdemeanor, as allowed by ORS 496.992(1), the state must prove not only the elements themselves but also the culpable mental states that attach to those elements as a matter of law. *Cho*, 297 Or at 201. But the elements of the offense are still all found in ORS 498.022.

By contrast, some charges allege a violation of a wildlife statute or rule that incorporates another wildlife statute or rule by cross-reference. For example, a person could be charged with violating ORS 498.002(1) by hunting deer without a tag in violation of OAR 635-065-0015(1). *See* ORS 498.002(1) (prohibiting hunting in violation of any wildlife statute or rule); OAR 635-065-0015(1) (requiring a tag to hunt game mammals). The elements of that offense would

necessarily come from both ORS 498.002(1) and OAR 635-065-0015(1), which together would require the state to prove that the defendant (1) angled for, took, hunted, trapped, or possessed or assisted another in angling for, taking, hunting, trapping, or possessing; (2) a game mammal;[7] (3) for which a tag was required; (4) without having on their person a valid tag for the dates, area, and species being hunted. Of course, as with the prior example, if the offense is charged as a misdemeanor, as allowed by ORS 496.992(1), the state must prove not only the elements themselves but also the culpable mental states that attach to each of those elements as a matter of law.

Defendant suggests that, even if we disagree with his construction of ORS 496.992(1), we could reach the same result by construing "in violation of the wildlife laws or any rule promulgated pursuant thereto" in ORS 498.002(1) as an element of the offense to which a culpable mental state of knowledge attaches. *See* ORS 498.002(1) ("No person shall angle for, take, hunt, trap or possess, or assist another in angling for, taking, hunting, trapping or possessing any wildlife *in violation of the wildlife laws or of any rule promulgated pursuant thereto*." (Emphasis added.)). That would add another element to the list in the illustration above, as well as affecting Counts 1 and 2 in this case. We are unpersuaded that the legislature intended ORS 498.002(1) to be read that way. We understand the phrase "in violation of the wildlife laws or any rule promulgated pursuant thereto" to essentially serve as a placeholder to be filled in with whatever specific wildlife law or rule the particular defendant is alleged to have violated in the particular case. That is the more natural reading of the text. It is also more in line with ORS 161.115(4), which provides that "[k]nowledge that conduct constitutes an offense *** is not an element of an offense unless the statute clearly so provides."

Accordingly, we reject defendant's argument that the state had to prove as an element of the offenses that defendant knew he was violating the wildlife laws. That argument is primarily based on defendant's proposed

---

[7] We describe the second element as "a game mammal," OAR 635-065-0015(1), rather than "any wildlife," ORS 498.002(1), because the state would have to prove the more specific animal type to establish a violation of OAR 635-065-0015(1).

construction of ORS 496.992(1), which we have rejected as described. It is also based to some degree on an argument about ORS 498.002(1), which we have also rejected as described. The trial court did not err in finding defendant guilty of the offenses without finding that he knew that he was violating the wildlife laws.

## MERGER

We next consider defendant's merger arguments. In his fourth assignment of error, defendant argues that the trial court erred in failing to merge the verdicts on all three counts. In his fifth assignment of error, he argues in the alternative that the trial court erred in failing to merge the verdicts on Counts 1 and 2. Neither claim of error is preserved, so defendant requests plain-error review.

"Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to consider a "plain" error. ORAP 5.45(1). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). Whether an error is "plain" is an issue of law. *State v. Gornick*, 340 Or 160, 167, 130 P3d 780 (2006). If the trial court plainly erred, it is a matter of discretion whether we will correct the error. *Id*.

Here, the question is whether the trial court plainly erred by not merging the verdicts on Counts 1, 2, and 3 or, alternatively, by not merging the verdicts on Counts 1 and 2. Merger is governed by ORS 161.067. As relevant here, ORS 161.067(3) provides as follows with respect to two violations of the same statute in a single criminal episode involving a single victim:

> "When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other

such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

As to defendant's first argument, we are unpersuaded that all three counts are properly understood as violations of "one statutory provision." ORS 161.067(3). Count 3 was not charged as a violation of the same statutory provision as Counts 1 and 2, and, given how the wildlife laws are structured, it is, at least, not obvious and reasonably in dispute that literally all wildlife misdemeanors should be viewed as violating a single statutory provision, ORS 496.992(1). We therefore reject defendant's argument for the merger of all three counts and proceed to his alternative argument.

Defendant contends that it was plain error not to merge the verdicts on Counts 1 and 2, both of which charge violations of ORS 498.002(1), because there was only one victim—the state—and there was no evidence of a "sufficient pause" between the two takings. The state counters that any error is not plain, because it is not obvious that there was only one victim—the elk could be victims—and because shooting two separate elk necessarily involves a "sufficient pause." The state alternatively argues that, even if a plain error occurred, we should not exercise our discretion to correct it.

We agree with defendant that it is obvious and not reasonably in dispute that Counts 1 and 2 have the same victim—the State of Oregon. "Where the statute defining a crime does not expressly identify the person who qualifies as a 'victim,' the court examines the statute to identify the gravamen of the crime and determine the class of persons whom the legislature intended to directly protect by way of the criminal proscription." *State v. Moncada*, 241 Or App 202, 212, 250 P3d 31 (2011), *rev den*, 351 Or 545 (2012). "In particular, we look to the harm targeted by the substantive criminal offense to identify who, in the view of the legislature, would qualify as a victim." *State v. Paye*, 310 Or App 408, 426, 486 P3d 808 (2021).

Here, it is starkly apparent from the statutory scheme that the legislature would view the state as the victim

of defendant's unlawful taking of elk. The statute under which defendant was charged, ORS 498.002(1), begins with an express statement that "[w]ildlife is the property of the state," then proceeds to prohibit unlawful taking of that wildlife. That is consistent with ORS 496.012, which describes the overarching policy motivating the wildlife laws in terms of depletion of state resources and provision of recreational and aesthetic benefits for state citizens. It is thus clear that the legislature conceives of the unlawful taking of wildlife as in the nature of a property offense against the state and its citizens, rather than akin to a person offense against the elk. *See also Barton*, 304 Or App at 496 (describing ORS 498.002(1) as punishing "the unlawful acquisition of state property"); *Simpson v. Department of Fish and Wildlife*, 242 Or App 287, 255 P3d 565 (2011) (discussing the history of ORS 498.002(1)'s provision that "[w]ildlife is the property of the state").

The next question is whether there was any evidence that would allow the trial court to find that there was a "sufficient pause" between the two takings to avoid merger under ORS 161.067(3). To avoid merger under that provision, "one crime must end before another begins *and* each crime must be separated from the others by a sufficient pause in the defendant's criminal conduct to afford him an opportunity to renounce his criminal intent." *State v. West-Howell*, 282 Or App 393, 398, 385 P3d 1121 (2016), *rev den*, 361 Or 312 (2017) (emphasis in original). Even a "temporary or brief" pause may be sufficient, but it must be "so marked in scope or quality that it affords a defendant the opportunity to renounce his or her criminal intent." *State v. Huffman*, 234 Or App 177, 184, 227 P3d 1206 (2010).

"In determining whether a 'sufficient pause' occurred, a court must consider the evidence regarding the duration of any pause, what happened during the pause, and whether the defendant's criminal conduct was 'qualitatively different' before and after the pause." *State v. Lasheski*, 309 Or App 140, 146, 481 P3d 966 (2021). "The duration of a pause and what occurred during that pause are questions of fact, while the question of whether the pause is 'sufficient' to allow for multiple convictions is one of law." *State v. Ballangrud*, 338 Or App 701, 716, 568 P3d 209 (2025).

Importantly, it is the state's burden to prove facts that establish a sufficient pause. *State v. Moscote-Saavedra*, 320 Or App 682, 691, 514 P3d 1169 (2022). If the state fails to meet that burden, then "the presumption that repeated violations of the same statutory provision in the same criminal episode merge" applies. *Id*. at 703; *see also id*. ("We cannot conclude on this record that the state has met its burden to overcome the presumption that repeated violations of the same statutory provision in the same criminal episode merge based on the passage of 30 minutes without some evidence of the duration of the break between each act of sexual abuse, or without more detail about the intervening acts that would allow for a nonspeculative inference that those acts created a pause so marked in scope or quality that it afforded defendant an opportunity to renounce his criminal intent between committing the acts of sexual abuse."). In other words, merger is presumed unless there is evidence supporting findings establishing anti-merger.

In this case, there was no evidence whatsoever as to how much time passed between defendant killing the bull elk and killing the cow elk. It could have been seconds, minutes, or hours. Nor is there any evidence of a change in circumstances or location, or any intervening events, between defendant killing the first and second elk. The state argues that the evidence was nonetheless enough to prove a sufficient pause because, "by its nature, shooting and killing two different game animals is not like the kind of 'continuous and uninterrupted attack' that this court has concluded requires merger in other contexts."

We disagree with the state that the mere fact that someone fired twice (as can be inferred here) is enough to prove a sufficient pause for anti-merger purposes. Given the complete lack of evidence as to the timing and circumstances of defendant shooting the two elk, the evidence was legally insufficient to prove a sufficient pause, and we view that proposition as obvious and not reasonably in dispute. *See State v. Coats*, 312 Or App 213, 218-19, 491 P3d 89, *rev den*, 368 Or 560 (2021) (holding that verdicts on two counts of unlawful use of a vehicle should have merged, where the defendant unlawfully used two vehicles in close succession,

and, even if the evidence showed enough time for him to change his mind, it did not show any cessation in his activities); *State v. Zachery*, 304 Or App 476, 479, 467 P3d 827 (2020) (holding that five contempt findings should have been merged into two, where the state failed to adduce evidence of a sufficient pause between individual attempts to contact the victim, "such as the specific timing of each contact within the series or other contextual circumstances of those communications," except as between two sets of contacts); *State v. Dugan*, 282 Or App 768, 773, 387 P3d 439 (2016) (holding that verdicts on two counts of first-degree sexual abuse should have merged, where the two acts "occurred in sequence over a brief period of time, between 10 and 15 minutes," in the same location, and the state failed to show any significant intervening event or pause in the defendant's aggression).

We exercise our discretion to correct the plain error in failing to merge the verdicts on Counts 1 and 2, "given its gravity, the absence of any strategic reason for defendant not to have objected, and the minimal burden on the judicial system in ordering amendment of the judgment and resentencing." *State v. Harrington*, 337 Or App 350, 353, 562 P3d 1133, *rev den*, 373 Or 736 (2025) (exercising our discretion for those reasons to correct a plain error in failing to merge guilty verdicts).

In doing so, we reject the state's argument that we should not exercise our discretion to correct the error because, "[i]f defendant had objected, the state could have made a factual record on the issue of sufficient pause." The state's argument does not engage with the procedural posture in which the error occurred. The trial was over, the verdicts had been announced, and the state does not explain how, if defendant had argued merger at sentencing, it would have been proper for the court to reopen the trial record or hold an evidentiary hearing on the facts underlying the guilty verdicts. The only authority that the state cites is *State v. Thackaberry*, 194 Or App 511, 95 P3d 1142 (2004), *rev den*, 338 Or 17 (2005), which is readily distinguishable. We held in *Thackaberry* that, even if it was plain error to admit a toxicology report in a DUII case without

requiring its author to testify, we would not exercise our discretion to correct the error because, "had defendant raised his confrontation objection to the laboratory report at trial, the record likely would have developed differently, with the result that the witness might have testified, or defendant might have expressly waived any right to have the witness testify." 194 Or App at 517. The situation here is entirely different. Absent some explanation from the state as to how it would have been appropriate for the trial court to give the state a second chance to make a factual record regarding the offenses, we are unpersuaded that defendant's lack of objection affected the evidentiary record, and we reject that as a reason not to exercise our discretion.

Reversed and remanded for merger of the guilty verdicts on Counts 1 and 2; remanded for resentencing; otherwise affirmed.